(No. 23452.—

THE CHICAGO RAILWAYS COMPANY, Defendant in Error, *vs.* JOSEPH L. GILL, County Collector, Plaintiff in Error.

*Opinion filed June 11, 1937—Rehearing denied October 6, 1937.*

THOMAS J. COURTNEY, State's Attorney, (HAYDEN N. BELL, JACOB SHAMBERG, MARSHALL V. KEARNEY, and BRENDAN Q. O'BRIEN, of counsel,) for plaintiff in error.

JOHN R. GUILLIAMS, FRANK L. KRIETE, and ARTHUR J. DONOVAN, for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

The Chicago Railways Company filed its bill of complaint in the circuit court of Cook county seeking to enjoin the collection of certain taxes levied for the year 1931 against its interest in the tunnels under the Chicago river at North LaSalle street, and on West Washington street. The assessment was made upon a contention and theory of the collector that the plaintiff's interest in these tunnels constituted leasehold estates and was, therefore, tangible property subject to assessment by the local assessor. The injunction was granted and the collector has sued out this writ of error.

The facts preceding the litigation are substantially as follows: The plaintiff corporation is chartered to construct, own, purchase, lease or otherwise acquire, certain street railroads in the city of Chicago, and to operate them when acquired. Also to own and enjoy all real and personal property necessary or proper for the prosecution of the business. In 1907, the city council of Chicago, by ordinance, authorized the plaintiff to purchase the entire plant and franchises of the Chicago Union Traction Company, then in receivership, which ordinance was accepted by the plaintiff on January 29, 1908. In compliance with this ordinance, the plaintiff purchased all of the Chicago Union Traction Company properties, and has continued to operate them up to the present time. In 1870, a tunnel was constructed by the city of Chicago on LaSalle street under the Chicago river, and the North Chicago Street Railroad Company, predecessor of the plaintiff company, was authorized to operate its street railroad through this tunnel. A tunnel was later constructed at Washington street under the Chicago river, and the Chicago Passenger Railway Company, another predecessor company, was au-

thorized to maintain its tracks through the Washington street tunnel. In 1904, the Congress of the United States declared each of these tunnels an obstruction to navigation and ordered the Secretary of War to give notice to the persons or corporations owning or controlling them to alter them in certain respects by deepening and otherwise. Such notice was given to the city of Chicago and an ordinance was passed on June 18, 1906, requiring and directing the West Chicago Street Railway Company (another predecessor of the present company) to lower and reconstruct the Washington street tunnel, and requiring and directing the North Chicago Street Railroad Company to lower and reconstruct the LaSalle street tunnel, both such reconstruction jobs to be done in accordance with the requirements of the Secretary of War. This deepening and reconstruction was required to be done wholly at the expense of the street railway companies and without any expense or liability to the city of Chicago, provided, that if the city should elect to terminate the right of either of the companies to use either of the tunnels, the city should pay to such company the actual cost of lowering and reconstructing the tunnel. These ordinances were accepted by the companies, respectively, and by the Chicago Union Traction Company, which was then the operating company, and the two tunnels were reconstructed and lowered at a cost of $3,061,463. The cost of this work was set up on the books of the company in its capital account, and was included in a purchase price at which the city retained the option of buying the properties, or of requiring them to be sold to some other company it should nominate. In that capital account the value of all of the property described in the appraisal inventory, the value of all the franchises of every description, including street railways and tunnels, was set up at the sum of $29,000,000. It is the collector's contention that the interest of the street railway company in the tunnels,—i. e., that item of $3,061,463

which appears in its capital account, is properly described as a leasehold estate and therefore taxable as tangible property. The plaintiff contends, and the trial court held, that this item of capital account is intangible property and, therefore, not taxable by the local assessor. There is no other question in the case, notwithstanding there are more than two hundred pages of briefs, and more than two hundred and fifty cases have been cited to us.

For the purpose of assessment the property of corporations is divided into two classes,—*i. e.,* tangible and intangible, the tangible being assessed by local assessors, and the intangible by the State Tax Commission. The local assessors have no power to assess intangibles, (*Illinois Central Railroad Co.* v. *Carr,* 302 Ill. 172;) and the State Tax Commission has nothing to do with the assessing of tangibles. (*Central Illinois Public Service Co.* v. *Swartz,* 284 Ill. 108.) It is the gist of the collector's argument that the ordinance of 1907, under which the tunnels were deepened, conveyed an estate in the tunnels, and that this estate is corporeal property in the nature of a leasehold; that the railway company, having constructed the tunnel, has acquired a vested interest in real estate through the performance of its contract with the city and that this vested interest may be taxed as real property. The collector's principal reliance is placed upon *People* v. *Upham,* 221 Ill. 555, which will be discussed later in this opinion.

The issue involved in the case is so narrow, and the principles upon which it must be decided are so well settled, that no extensive discussion of many authorities is necessary. In *Central Illinois Public Service Co.* v. *Swartz, supra,* we pointed out the distinction between a franchise and a mere permission or license, saying: "It is urged for the appellees that the appellant, in addition to its franchise to be a corporation, has a special franchise to use the streets of the city of Bushnell under the ordinance granting it this right, and that this special franchise was properly assessed

by the assessor. A city can not grant a franchise but only a State. (*Chicago City Railway Co.* v. *People,* 73 Ill. 541; *People* v. *Union Gas Co.* 254 id. 395.) The appellant has no franchise but that granted by the State, though it can exercise this franchise within the city only by virtue of the permission evidenced by the ordinance, just as the permission of any private owner is necessary to the exercise of the franchise on his property. This permission or license exists independently of the poles, wires, apparatus, machinery or other means whereby it may be available. It attaches not to the tangible property of the corporation but to the franchise, and would remain and be available to the corporation if all its tangible property were destroyed." In that case an effort was made by the local assessor to assess and value for taxation that intangible right which the public utility had to maintain its poles and wires in the streets of the city. We pointed out that the right was merely an intangible one, and perpetually enjoined the collection of the tax.

In *Lobdell* v. *City of Chicago,* 227 Ill. 218, we held that the privilege of constructing and operating a street railway is a property right, for which a city may exact compensation when granting the privilege. Considering this case, together with the *Upham case,* we arrive at the conclusion that the privilege which the appellee enjoys of operating its street railway cars upon and over property owned by the city of Chicago, for the use of the public, is a property right, and that it is intangible. It is conceded that the two tunnels in question were originally built by, for, and at the expense of, the city, and this carries us to the necessary conclusion that the right of the street railway company to operate its cars through these tunnels is exactly the same kind of an intangible property right as that by which it operates on any other street or avenue.

It is insisted, however, that because the street railway company is entitled to be reimbursed for the expense to

which it was put in deepening the tunnel, and because this item of expenditure is carried on the books of the company as an asset, the situation is in some way different. We are unable to agree with this argument. It is true that the street railway company did pay the expense of deepening these tunnels, and it is also true that this item of expense is a proper credit to capital account and is a proper asset of the company for rate-making purposes. The same might also be said of wages paid to surveyors in laying out a line of road, or to wages paid to laborers for digging a post-hole into which a telephone or telegraph post might be placed. These items would be proper items of capital account and quite properly carried as capital assets. They would not, however, be tangible. The situation, as we see it, is no different than if the street railway company had paid the city, in cash, the sum of $3,061,463 in return for the privilege of operating its street cars on the streets of the city, thereby obtaining, as held in the case of *Lobdell* v. *City of Chicago, supra,* a property right which could have been credited to capital account and properly included in any option to sell which might have been agreed upon with the city. That property right, however, would have been just as intangible as the one discussed by us in the case of *Central Illinois Public Service Co.* v. *Swartz, supra.* That such a right is not an interest or estate in real property was clearly held by us in *People* v. *Chicago City Railway Co.* 324 Ill. 618. The question involved in that case was the right of the city to compel the street railway company to move its tracks at its own expense. The railway company took the same position as is taken here by the collector, contending that it had a property right in that portion of the street where its tracks were laid under the ordinance, of which it could not constitutionally be deprived without compensation. In the course of the opinion we said: "A street railway acquires no interest or estate in the soil by laying its rails on the streets under an ordi-

nance permitting it. The grant made by the city is merely a license to the railway company to construct and operate its road upon certain streets, (*City of Sullivan* v. *Central Illinois Public Service Co.* 287 Ill. 19; *Chicago City Railway Co.* v. *People,* 73 id. 541;) which becomes a contract when accepted and acted upon in a substantial manner. * * * The license under which the railway company constructs, maintains and operates its railroad, was granted and accepted subject to a reserved police power on the part of the city to regulate the use and enjoyment by the railway company of the street in such manner as the public convenience or safety at anytime might require. * * * There is nothing in the ordinance to indicate that the city has surrendered any of its power and authority to control and improve its streets, and if there were it would be void. The power of the city to protect the public in the use of its streets cannot be abrogated by ordinance or relinquished by contract. * * * The company, however, insists that, granting the city has power to compel the re-location and removal of its tracks to the new location, it can do so only by the exercise of the power of eminent domain. This argument is based upon the contention that the right to occupy the street with its tracks at the place where they are located and constructed is a property right, of which it cannot be deprived without compensation. What we have already said disposes of these contentions." The record does not indicate any attempt on the part of the city to grant a lease to the railway company on these tunnels or either of them, and, as we pointed out in the foregoing citation, any such attempt would have been void. The provision of the ordinance granting the right to use these tunnels merely is, that, in consideration of its acceptance by the company, permission and authority is given to operate street railways in, upon, and along certain named public ways, including, "LaSalle avenue, LaSalle street, from Illinois street through LaSalle street tunnel to Monroe street * * * Wash-

ington street, from State street to Des Plaines street and through Washington street tunnel." Nothing more was granted than this. No distinction is made as to the tunnels, and no greater rights given in them than in any other street or public way mentioned in the ordinance.

What we have already said largely disposes of the contention founded upon *People* v. *Upham, supra.* In that case two private corporations were the owners of, and were in exclusive possession and control of, and were the sole proprietors of, certain private tunnels which had been constructed beneath the surface of public streets with the consent of the city, granted by certain ordinances. These tunnels were not used for any public purpose, and the public had no right to enter or pass through them. They were used exclusively and solely for the private use and profit of the corporations constructing them, and the city had no interest in them, nor were they in any way a part of any public street. We held that these privately owned tunnels were tangible in form, the same as a bridge, a pier or a railroad track, and that they constituted rights and privileges in lands, which should be assessed for taxation. If we were considering the question as to whether the rails, ties and trolley wires of the street car company passing through the tunnel could be assessed, or if we were considering a question as to whether a tunnel constructed by, for and under the exclusive control of the railway company under a street, and entirely separate from it, were assessable, the case would be in point, but on the record before us it is not controlling.

It is our conclusion that the money expended by the street railway company in deepening the two tunnels is merely an intangible item in its capital account, not subject to assessment by local assessing bodies, and that the circuit court arrived at the correct conclusion.

The decree will be affirmed.                    *Decree affirmed.*