ILLINOIS BELL TELEPHONE COMPANY, Plaintiff-Appellee, v. EDWARD J. ROSEWELL, Cook County Collector, et al., Defendants-Appellants.

First District (1st Division)   No. 79-648

Opinion filed March 31, 1980.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Mark V. Chester, Henry A. Hauser, and Robert Cahill, Assistant State's Attorneys, of counsel), for appellants.

James R. Bryant, Jr., and R. Dean Irwin, both of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendants Edward J. Rosewell, county collector of Cook County, Seymour Zaban and Harry H. Semrow, board of appeals of Cook County, and Thomas M. Tully, assessor of Cook County, appeal from the order enjoining them to refund $3,310,103.20 in personal property taxes collected from plaintiff Illinois Bell Telephone Company for the year 1977. The tax was based on the assessed value of plaintiff's personal property located in the City of Chicago. After a hearing, the trial court quashed the tax assessment on the grounds that the assessor acted arbitrarily by merely assessing plaintiff's personal property at 1976 values, instead of the lower values offered by plaintiff. Such conduct, the court concluded, amounted to constructive fraud. Defendants appealed.

On appeal, defendants argue that the trial court erred (1) in concluding that the evidence supported a finding of constructive fraud; (2) in granting relief on the "admittedly false" tax schedule submitted by

plaintiff and (3) in issuing a writ of certiorari to review the findings of the board of appeals.

On July 1, 1977, plaintiff filed its personal property tax return for Cook County with defendant Cook County assessor. The return was comprised of two components: valuations for personal property located in Chicago and valuations for personal property located in suburban Cook County. In 1977, plaintiff submitted a valuation schedule listing its personal property in Chicago (City) at $545,155,178.00. This was approximately 15 million dollars less than the 1976 valuation of $560,132,316.00. The schedule indicated a six million dollar increase, however, in personal property in suburban Cook County from the previous year.

After the schedule was submitted to the Cook County assessor's office, it was reviewed by Mr. Gregory Lafakis, the deputy assessor. He questioned the decrease in personal property located in the City that plaintiff maintained occurred during the year. He thought the decrease unusual, particularly in view of the concurrent increase in the suburban valuation and a prior incident where plaintiff had undervalued certain real estate located in the City. After conferring with the head of the personal property division, Lafakis requested plaintiff to submit specific proof of the diminished value that allegedly occurred from April 1, 1976, to April 1, 1977. Whether such proof was ever provided is disputed, although meetings between plaintiff and the assessor's office were held. Subsequently, plaintiff's 1977 valuation schedule for the City was rejected by the assessor.

Because the 1976 schedule had been accepted by both plaintiff and the assessor as being an accurate valuation of its personal property in the City for 1976, this figure was again used by the assessor for 1977. The assessor accepted, however, the 1977 suburban valuations submitted by plaintiff. It was this combination of 1976 and 1977 figures that was eventually used by the assessor in determining plaintiff's 1977 personal property tax.

When plaintiff learned of the assessed value ascribed by the assessor to its property, it filed a revised schedule for the City. The revised schedule valued the personal property within the City at $482,103,411.00, approximately 63 million dollars *less* than reported on the original schedule. The reduced valuation, like that of the original schedule, purported to be as of April 1, 1977, and was also subscribed and sworn to as true by plaintiff's accountant. No explanation was submitted with the revised schedule to justify the lower valuation. However, during the subsequent trial, plaintiff's officers testified that the reduction was the result of depreciating their switching equipment to the maximum recommended by the State Department of Local Government Affairs.

By the time the assessor received the revised schedule, the tax assessment on plaintiff's personal property within the City had already been made. It was based on the 1976 valuations. Plaintiff appealed the assessment to the board of appeals and was denied relief. Plaintiff sought a writ of *certiorari* to review the decision of the board by the trial court. Plaintiff alleged that the assessment should have been set aside by the board because it was arbitrarily predicated on the 1976 valuations and therefore was constructively fraudulent. The trial court agreed, and defendants appealed.

On appeal, defendants first argue that the trial court erred in concluding that the 1977 tax assessment was the result of constructive fraud. They argue that the assessment was not arbitrary, but rather, based on the last, uncontested known value of the property. They argue further that their belief that plaintiff was understating the value of its personal property was later confirmed by plaintiff's own records which indicated that the actual cash value of its personal property in the City for 1977 was $682,324,781.00. They therefore conclude that the trial court should not have quashed the tax assessment.

■ We agree. Taxation of property is a legislative rather than a judicial function, and under limitations expressed in section 1 of article IX of the Illinois Constitution, the courts, except in cases of fraud, have no authority to review or determine the value of property which has been assessed by appropriate administrative officers. (*White v. Board of Appeals* (1970), 45 Ill. 2d 378, 259 N.E.2d 51; *People ex rel. Nordlund v. S.B.A. Co.* (1966), 34 Ill. 2d 373, 215 N.E.2d 233.) Constructive fraud was discussed by the supreme court in *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299. The court stated:

"In administering the legal remedy, however, the courts must presume, in the absence of evidence to the contrary, that the assessing officials performed their duty, and the court will not set aside an assessment merely because of a difference of opinion as to value. [Citation.] It is only where the valuation has been fraudulently made that it is subject to judicial review. [Citation.] Overvaluation may be so excessive, under some circumstances, as to justify the conclusion that it was not honestly made and is thus constructively fraudulent. [Citations.] Similarly when property is assessed higher than other similar property [citation] or the assessed value is reached under circumstances showing either a lack of knowledge of known values or a deliberate fixing of values contrary to known value, fraud will be inferred. [Citation.] In such cases, courts will grant relief." 56 Ill. 2d 101, 104-05, 306 N.E.2d 299, 301.

■■ In the present case, the $560,132,316 assessment was not "so

excessive" as to justify the conclusion that it was not honestly made and was thus constructively fraudulent. In fact, there was only a 16 per cent variation between the assessment and plaintiff's revised schedule. In *People ex rel. Nordlund v. S.B.A. Co.* (1966), 34 Ill. 2d 373, 215 N.E.2d 233, a 25-percent disparity was held to be a mere difference of opinion and not evidence of constructive fraud.

Nor was there any evidence presented at trial indicating that plaintiff's personal property was assessed differently than other similar property as was the case in *People ex rel. Skidmore v. Anderson* (1974), 56 Ill. 2d 334, 307 N.E.2d 391. In fact, the evidence indicated that if anything, plaintiff was given more consideration than other taxpayers. Patrick Doody, chief of personal property in the Cook County assessor's office, testified that plaintiff was given more time in which to provide documentation in support of its valuation schedule than other taxpayers.

Plaintiff argues that the assessment was the result of an arbitrary fixing of values based on the assessment of the previous year. As such, plaintiff concludes, the assessment was reached under circumstances showing either a lack of knowledge or a deliberate fixing of value contrary to known values.

■■ We cannot accept this view. The assessor's judgment in placing a value on personal property is presumptively accurate. If, after a schedule has been filed and an assessment made, an objection is interposed by the taxpayer, the burden of showing that the assessment is invalid or erroneous is on the taxpayer. (*People ex rel. Parker v. Board of Appeals* (1937), 367 Ill. 559, 12 N.E.2d 666.) It is only where the assessor has fixed a valuation entirely out of proportion to the actual value of the property so that it can readily be seen that such assessment was unfair, deliberate and in gross defiance of the rights of the property owner that the court will sustain the defense of the taxpayer. (*People ex rel. Tedrick v. Allied Oil Corp.* (1944), 388 Ill. 219, 57 N.E.2d 859.) Consequently, the burden was on plaintiff to prove that as of April 1, 1977, it did not have personal property in the City worth $560,132,316.00.

■ Plaintiff argues that it supplied documentation to substantiate its original and revised schedules; however, defendants deny ever receiving all of the requested information. In any event, we find the point irrelevant, since plaintiff's own records which were produced at trial indicated that the actual cash value of its personal property was $682,324,781.00, over 200 million dollars more than reported by plaintiff on its revised 1977 schedule. Plaintiff attempts to justify this discrepancy by arguing that the personal property values must be debased in order to allow for the multiplier which is ultimately applied to both real and personal property valuations. Failure to make an allowance for the multiplier, plaintiff contends, results in its personal property being taxed

at a higher level than the statutory maximum. We note that this same argument was raised before the Illinois Supreme Court in *People ex rel. Reinhardt v. McRoberts* (1961), 22 Ill. 2d 282, 174 N.E.2d 841, and rejected. We therefore reject plaintiff's practice of unilaterally debasing its personal property in order to allow for the multiplier. Accordingly, we believe it was improper for the trial court to grant relief premised on plaintiff's inaccurate schedules.

We note further that we do not believe that the assessor acted arbitrarily by assessing plaintiff's property at the 1976 valuation. Patrick Doody testified that it was routine practice for the assessor to rely on the schedule of the previous year when current schedules were found unsatisfactory, since the schedule for the previous year was the last known, uncontested figure. Given a taxpayer the immense size of plaintiff, we feel there was little more that the assessor could have done than rely on the 1976 valuation. This is not the usual constructive fraud case which generally involves a dispute as to the value of *real estate*. There it is relatively easy for the assessor to have the property appraised. To have required the assessor to have made such an appraisal of plaintiff's personal property in the present case would have imposed an incredible burden. The assessor would either have had to attempt to inventory and assess every object of plaintiff's personal property located in the City or have had to rely on records supplied by plaintiff. Neither alternative would have been satisfactory.

■■ Consequently, under the facts in this case, we believe the trial court erred in concluding that the assessor's use of the 1976 assessed valuation amounted to constructive fraud and further erred in granting relief based on plaintiff's 1977 schedules. Because we are reversing on this basis, we find it unnecessary to address the other issues raised on appeal.

For the foregoing reasons, the order of the circuit court of Cook County is reversed.

Judgment reversed.

GOLDBERG, P. J., and O'CONNOR, J., concur.