THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant-Appellee.

First District (1st Division)    No. 79-840

Opinion filed February 17, 1981.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Henry A. Hauser, Assistant State's Attorney, of counsel), for the People.

Sidley & Austin, of Chicago (J. Robert Barr, Frederic J. Artwick and Joanne M. Frasca, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

This action was brought by the People of the State of Illinois against International Business Machines Corporation (IBM) for nonpayment of 1976 Cook County personal property taxes in the amount of $2,595,394.86. The amount sought in this action was the difference between the total amount billed IBM for its 1976 personal property taxes and the amount IBM paid. After a hearing, the trial court entered judgment in favor of IBM. The State appeals, contending that (1) the trial court's finding of constructive fraud in IBM's 1976 personal property tax assessment was erroneous and unsupported by clear and convincing evidence, and (2) the trial court incorrectly ruled that the assessor was bound by its own auditing instructions in assessing IBM's personalty.

The parties stipulated to the admission of certain facts and various documents into evidence. The following facts were stipulated and deemed admitted:

(1) For the years 1972-1976, defendant timely filed its corporate personal property tax return, duly executed under oath, with the Cook County Assessor.

(2) Said tax returns showed valuations for all classes of personal property owned by defendant and located, or having a business situs in Cook County, Illinois.

(3) For 1976, the Cook County Assessor entered assessed valuations for all classes of personal property at defendant's locations precisely in the amounts set forth on defendant's return, except that the Assessor increased the value of defendant's machinery and equipment reported at One IBM Plaza, Chicago, from the value of $26,709,080 set forth on the return to an assessed value, before equalization, of $47,376,414, an increase of $20,667,334.

(4) Defendant timely filed a complaint with the Board of Appeals of Cook County with regard to the 1976 assessment.

(5) After a hearing, the Board of Appeals of Cook County denied defendant relief.

(6) The value of defendant's machinery and equipment located at One IBM Plaza as reported by it on its 1976 personal property tax return was determined in accordance with the 1976 Rules of Valuation published by the Cook County Assessor.

(7) The 1976 Rules of Valuation published by the Cook County Assessor provided in relevant part: "Depreciable assets, Items Nos. 8 and 10 should be reported at 35% of Net book value (Net book value is determined by deducting accumulated depreciation from original cost.) Assets depreciated to less 20% of their original value should be reported at 20% as long as they possess some degree of utility to the owner."

(8) For 1976, the Cook County Assessor entered an assessed value for defendant's machinery and equipment at One IBM Plaza at approximately 62 percent of its net book value.

(9) Defendant has paid personal property taxes to the Cook County Collector for 1976 in the amount of $3,591,925.68 on account of personal property assessed at One IBM Plaza, Chicago.

The following documents were among the various documents the parties agreed to admit into evidence:

(1) Defendant's Cook County personal property tax Returns for the years 1972 through 1976.

(2) Defendant's 1976 inventory of data processing machines, which was available to the Cook County Assessor with defendant's 1976 personal property tax return. Said inventory consists of a three-volume computer printout showing the description, type and serial number, manufacturing cost, depreciated manufacturing cost and the date of manufacture for each item of machinery and equipment owned by defendant and leased to customers located in Cook County on April 1, 1976.

(3) The Rules of Valuation published by the Cook County Assessor for each of the years 1972 through 1976.

The only evidence offered by the State was admitted pursuant to the stipulation. It consisted of IBM's 1976 personal property tax return along with various supporting documents, and a worksheet of the Cook County Assessor indicating the increase in valuation made by him. Plaintiff also offered the 1976 tax bill and a stipulation that $2,595,394.86 had not been paid. Plaintiff then rested.

Pursuant to the stipulation, IBM offered the following documents which the court admitted into evidence: (1) a three-volume computer printout showing, *inter alia*, the manufacturing cost and depreciated cost of each item of machinery and equipment owned by IBM and leased to customers in Cook County on April 1, 1976; (2) IBM's Cook County personal property tax returns for each of the years 1972 through 1976, along with all supporting documents filed therewith; and (3) the Rules of Valuation of the Cook County Assessor for each of the years 1972 through 1976.

The evidence deposition of James Meehan was offered by IBM and received into evidence without objection. Meehan was chief of the Personal Property Division of the Cook County Assessor's Office from May 1, 1972, through May 16, 1977. Meehan, who was examined under section 60 (Ill. Rev. Stat. 1979, ch. 110, par. 60), testified that he was principally responsible for the assessment of IBM's personal property located in Cook County in 1972 through 1976. Meehan identified the following documents which the assessor's office sent to all taxpayers on or about April 1, 1976: (1) a four-page personal property tax return form, containing a schedule for the listing of personal property broken down for fifteen different classes of property; (2) a multiple recap sheet which was to be completed by taxpayers with more than five locations in Cook County; (3) the 1976 Rules of Valuation, which informed taxpayers of the rules which should be followed in valuing their personal property on the accompanying recap sheet and schedule.

Meehan identified IBM's 1976 personal property tax return and explained the procedure he used in arriving at a valuation for IBM's machinery and equipment reported from One IBM Plaza—line item 10. John Lewis, an auditor supervised by Meehan, matched the 1976 return with the 1975 assessment and noted that the schedule was, as in the four preceding years, $20 million below the assessed value of the previous year. Meehan then prepared a worksheet comparing the total valuation for all personal property reported by IBM for 1976 ($32,486,609) with the total assessed valuations for IBM's personal property that he had previously entered in the years 1972 through 1975. Meehan testified that in every year from 1972 through 1976 he had calculated an increase necessary to bring

IBM's total reported valuation up to the previous year's assessment level and had then tacked that increase on to line item 10, machinery and equipment located at One IBM Plaza.

In 1972, IBM had submitted to the assessor documentation in the form of a computer printout listing and identifying each individual item of machinery and equipment owned by IBM on April 1, 1972, and leased to lessees in Cook County, showing for each item the name and address of the lessee and the manufacturing cost, depreciated cost and date of manufacture. Meehan also stated that a similar printout for the year 1973 had been offered to him, but he had refused to look at it. The 1976 computer printout was not filed with IBM's 1976 personal property tax return, but was "available" to the Assessor.

Meehan testified that he calculated that $21,667,334 had to be added to the 1976 figure reported by IBM to bring the aggregate assessment up to the 1972 through 1975 levels. Meehan stated that for some unknown reason he then deducted $1 million from the initial increase, bringing it down to $20,667,334. Meehan stated that at his direction John Lewis added the $20,667,334 increase to line item 10—the valuation of IBM's machinery and equipment reported from One IBM Plaza. Meehan explained that the increase was added to that single line item and location because "mechanically, it was easier to do, obviously." Meehan explained that he did not add on a 10% penalty, the assessor's usual policy where no balance sheet is filed, because he felt IBM was "showing good faith," but that IBM's attempts to explain its 1976 schedule were not "sufficient under the circumstances." Meehan was unable to identify any additional information which he needed to verify IBM's reported valuation. Meehan also stated that although he refused even to look at the list of machinery and equipment, he never told IBM's attorney what additional information would satisfy him.

IBM called Richard Norcross to testify. Norcross, a tax analyst for IBM, prepared IBM's Cook County personal property tax return in 1976. Norcross testified that he first obtained a printout called an "Exception Listing," showing all IBM machinery and equipment leased to customers in Cook County and what changes had taken place with respect to such property between April 1, 1975, and April 1, 1976. Norcross then reviewed each item of personal property listed on the printout and, using maps and information furnished by IBM's local branch offices, located and noted any errors. He next entered these changes into the computer data banks and obtained a corrected printout reflecting the changes. The corrected printout, which was bound into three volumes, listed each customer in Cook County by name, address and customer number, the type of equipment, the serial number of each item, its manufacturing cost, its depreciated cost and the month and year of manufacture. Norcross testi-

fied that he next transferred the total figures contained in the three-volume computer printout to IBM's consolidated balance sheet. Norcross testified that he used these valuations on the balance sheet in completing the multiple recap sheet submitted along with the 1976 return to the Cook County Assessor's Office. Norcross explained how he arrived at a valuation for line item 10—Machinery and Equipment. The amount entered on line item 10 was the value of (1) data processing machines with customers, (2) uninstalled machines at branch offices and warehouse, (3) IBM diagnostic tools at branch offices and warehouse, and (4) data processing machines at branch offices after application of the 35% factor in accordance with the assessor's instructions. Norcross explained that the valuations for all the other line items of property on the multiple recap sheet were determined by following a similar procedure, making sure that the proper percentages prescribed in the Rules of Valuation were used in each case.

The multiple recap sheet was completed, and Norcross testified he then took the total valuations for each class of property for all locations and transcribed these figures on the 1976 Personal Property Tax Schedule under the column labeled "Owner's Valuation." After Norcross prepared the returns and supporting documents, he forwarded them to his superior, Mr. Corbett. Corbett reviewed them and forwarded them to Mr. Dixon, the director of excise and property taxes at IBM, who signed the return.

On cross-examination, Norcross stated that he was not qualified to demonstrate what goes into the computer; that he would not claim any direct knowledge of how material got into the printout; and that he did not know "what manufacturer's cost means or how it comes to be."

John Dixon, IBM's director of excise and property taxes, testified that it was his responsibility to ensure that all of IBM's excise and property taxes were paid. Dixon explained how IBM arrived at the values for machinery and equipment. He testified that the original cost figure represented labor, overhead and material that was extended in fabricating, assembling and testing each of the units of equipment. Dixon further testified that the figures for depreciated cost value on the printout represented original cost less accumulated depreciation. Dixon noted that there is a floor on depreciation under the Cook County Assessor's Rules of Valuation and that, pursuant to these rules, the depreciated cost reported on IBM's personal property tax return was never less than 20% of original cost.

On March 2, 1979, the trial court issued its memorandum of judgment in favor of the taxpayer, finding that the evidence established that the assessor arbitrarily increased IBM's assessment to what it had been for the previous year, less an unexplained $1 million, and that the use of this arbitrary "rule of thumb" amounted to "constructive fraud." The trial

court found that IBM had correctly reported the value of its property on its 1976 return in accordance with the assessor's Rules of Valuation and had offered to support its valuations with detailed data. The trial court concluded that the taxpayer had rebutted the presumption that the assessment was proper with "clear and sufficient evidence" after noting that the assessor applied a 62% debasement percentage in lieu of the 35% debasement percentage provided for in the assessor's own Rules of Valuation. The State appeals. We affirm.

The State first contends that the trial court's finding of constructive fraud in IBM's 1976 personal property tax assessment was erroneous and unsupported by clear and convincing evidence.

Initially we note that the taxation of property is a legislative and not a judicial function and the courts will not review the assessments of property upon which taxes are based unless the assessments are fraudulent or constructively fraudulent. *LaSalle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252; *White v. Board of Appeals of Cook County* (1970), 45 Ill. 2d 378, 259 N.E.2d 51; *People ex rel. Nordlund v. S. B. A. Co.* (1966), 34 Ill. 2d 373, 215 N.E.2d 233.

It is presumed that the assessment is proper and the burden is on the taxpayer to establish by clear and convincing evidence that fraud has been committed in the valuation of his property. (*People ex rel. Schmulbach v. City of St. Louis* (1951), 408 Ill. 491, 97 N.E.2d 252.) In *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104-05, 306 N.E.2d 299, the court, in discussing the proof required to establish constructive fraud, stated:

> "* * * Over-valuation may be so excessive, under some circumstances, as to justify the conclusion that it was not honestly made and is thus constructively fraudulent. [Citations.] Similarly, when property is assessed disproportionately higher than other similar property [citation] or the assessed value is reached under circumstances showing either a lack of knowledge of known values or a deliberate fixing of values contrary to known value, fraud will be inferred. [Citation.] * * *."

Once the presumption of the validity of the assessment is rebutted, the burden shifts to the assessor to produce evidence to justify the assessment. (*People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88, 174 N.E.2d 175.) We also note that "[w]hether there is a fraud on account of excessive valuation of property for taxation will depend largely on the circumstances of each particular case." *Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 211, 387 N.E.2d 351.

We find that the record supports the trial court's finding that IBM's personal property tax assessment was made in a constructively fraudulent

manner. Although IBM made "available" to the assessor a three-volume computer printout which listed each item of taxable personal property located in Cook County in 1976 which was owned by IBM and leased to customers, the assessor failed to review these documents. Instead, the assessor compared IBM's 1976 schedule with the 1975 assessment and concluded that IBM's 1976 assessment should be increased by $21,667,334 in order to approximate the 1975 assessment. The assessor then reduced the increase by $1 million. The State argues that in the recent case *Illinois Bell Telephone Co. v. Rosewell* (1980), 82 Ill. App. 3d 975, 403 N.E.2d 662, *appeal denied* (1980), 81 Ill. 2d 602, the court held that the assessor in a personal property tax case may properly rely on the prior year's assessment when the schedules filed by a taxpayer are unsatisfactory. However, we find that case distinguishable on its facts. In the *Illinois Bell Telephone Co.* case, whether or not the taxpayer had provided specific proof of value was disputed. In the instant case, there is no question but that IBM made available to the assessor a detailed list of the value of its personal property. In addition, in the instant case the assessor, after comparing IBM's 1976 schedule with the 1975 assessment and determining that an increase of $21,667,334 was needed in order to approximate the 1975 assessment, without explanation deducted $1 million from the amount of the increase, thereby increasing the value on IBM's schedule by $20,667,334 instead of $21,667,334. Therefore, we find that this is not merely a case where the assessor relied on the previous year's assessment value when it was disputed whether the taxpayer submitted proof of the values it set out in its schedule. Here, IBM submitted detailed proof of the values it declared on its return and the assessor not only relied upon the previous year's assessment but also arbitrarily altered the assessment figure. The assessor did not take into consideration any recognized elements of value in determining the assessed valuation of IBM's machinery and equipment in 1976. Instead, the assessor acted in an arbitrary manner in determining the amount of the assessment without reference to ascertainable facts regarding the value of the property.

IBM established by clear and convincing evidence that the 1976 assessment of IBM's personal property tax was constructively fraudulent and thereby rebutted the presumption in favor of the propriety of the assessment. Because no evidence was presented by the assessor to justify the assessment, we conclude that the trial court did not err in finding that IBM's 1976 personal property tax assessment was made in a constructively fraudulent manner.

The State's second contention is that the trial court incorrectly ruled that the assessor was bound by its own auditing instructions in assessing IBM's personalty. However, the trial court did not make such a ruling. The trial court merely noted in its discussion finding that the assessor's procedures in assessing IBM's property were constructively fraudulent

that the Cook County Assessor failed to follow the instructions it mailed to taxpayers, but that the taxpayer IBM did follow the assessor's instructions in determining the values to put on its schedule. Therefore, we find that the State's second contention does not require reversal of the trial court's ruling.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.