THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant-Appellant.

First District (1st Division)   No. 83—2367

Opinion filed December 2, 1985.

Sidley & Austin, of Chicago (J. Robert Barr, Frederic J. Artwick, J. Andrew Schlickman, and Lisa A. Hausten, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Deputy State's Attorney, Henry A. Hauser, Assistant State's Attorney, and Mark V. Chester, Thomas J. McNulty, and Steven Lawson, Special Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:*

Defendant International Business Machines Corporation appeals from a judgment in the amount of $6,815,934.21 for delinquent 1977 personal property taxes plus interest and costs. On appeal, defendant contends: (1) the trial court erred in holding that the assessor was not bound by the rules promulgated by him, and (2) the trial court's ruling that defendant failed to prove constructive fraud was against the manifest weight of the evidence.

The State filed an action against International Business Machines Corporation (IBM) seeking payment of delinquent 1977 personal property taxes. The personalty around which the dispute revolves is office furniture and fixtures and machinery and equipment located in Cook County. IBM reported the assessed value of furniture and fixtures at $1,421,831. The county assessor increased the value to $2,843,463. Machinery and equipment was valued by IBM at $29,195,240, but at $58,390,540 by the assessor. Relying on its own computations, IBM determined that its corporate personal property tax was $3,991,526 and paid this amount. The assessor determined that $7,920,492.34 in taxes was due and subsequently filed an action to recover the remainder.

■ In an action to collect unpaid personal property taxes the people initially move to establish their *prima facie* case by introducing the collector's return showing that the unpaid taxes were extended, and the amount thereof. (Ill. Rev. Stat. 1977, ch. 120, par. 756.) The admissibility of the collector's return was stipulated to by the parties. A property assessment for tax purposes will be reviewed only upon a showing of fraud or constructive fraud. (*LaSalle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 329-30, 312 N.E.2d 252; *People ex rel. Nordlund v. S.B.A. Co.* (1966), 34 Ill. 2d 373, 376, 215 N.E.2d 233.) "An assessment is presumed proper; the taxpayer must estab-

---

*Justice McGloon heard the oral argument in this case, and following his retirement, Justice Buckley was substituted, listened to the tapes of oral argument and read the briefs and record, and concurs in the opinion.

lish by clear and convincing evidence that fraud has been committed in the valuation of his property." (*People v. International Business Machines Corp.* (1982), 89 Ill. 2d 287, 293, 432 N.E.2d 923.) Whether the assessor has committed constructive fraud depends upon the facts and circumstances of each particular case.

In its answer to the complaint IBM alleged that the assessor was required to follow rules of valuation promulgated by him, but failed to do so. It further alleged that the assessment was so excessive that it constituted constructive fraud.

The parties stipulated many facts and documents into evidence, and William Risley, a witness called on behalf of IBM, prepared the tax return at issue. He reported furniture, fixtures, machinery and equipment at 35% of the depreciated manufacturing value. Straight line depreciation was used as required by the assessor's rules. The manufacturing cost of machinery and equipment represented the total of the direct material, direct labor, overhead and manufacturing engineering costs. In calculating the assessed value of furniture and fixtures, Risley subtracted depreciation from the acquisition cost and reported 35% of the remainder.

Robert Nichols, an independent auditor retained by IBM, testified that IBM used full absorption costing to compute its manufacturing costs. This method most accurately reflects actual manufacturing costs because it includes all costs incurred at the plant level. Generally, other methods reflect lower manufacturing costs. Other expenses such as research and development, advertising, sales and taxes were incurred by IBM before and after the manufacturing process and were not included in computing manufacturing costs. All costs were accumulated by the time IBM sold or leased its equipment. Nichols defined net book value as the original accumulated cost of production less its accumulated depreciation.

Stanley Blumenthal, an expert in valuing business equipment, conducted studies comparing IBM's 1977 personal property tax assessments with the assessments of other Cook County taxpayers whose business activities were similar to those of IBM. Each company had its own research and development, manufacturing, sales and maintenance operations in the United States and abroad. The companies also had similar product lines. Blumenthal used seven bases for comparing IBM with the other companies and concluded that IBM's property was assessed at a higher value than the personal property owned by the other companies.

IBM also presented the testimony of three employees of the assessor's office in 1977, chiefly responsible for the IBM assessment. Dan-

iel J. Pierce, Patrick C. Doody, and Gregory J. Lafakis. Gregory Lafakis, a former deputy assessor, reviewed IBM's tax return and supporting documentation. Based on his review and knowledge of appraisal standards, theories and practices and on information in professional publications, Lafakis determined that the value reported by IBM was low. He also obtained various sales and rental prices for IBM's equipment and found that such prices were three to five times higher than the reported value. He believed equipment should not be valued at retail price, and he therefore assessed the property at twice the value reported by IBM.

Lafakis further testified that the rules for preparation of personal property tax returns were not closely related to those for establishing market value. The statute is the primary source of authority for determining assessed value. Costs which should have been included in computing value were sales expenses, all research and development expenses, engineering costs and transportation and installation.

Patrick Doody became chief of the personal property division in the assessor's office in the fall of 1977. He testified that a memo in the assessor's file showed that the reported value was increased because it was only one-third to one-quarter of the selling price of such equipment. Also, soft costs which are part of market value and which should have been included, were excluded when IBM calculated the value of its personalty. Members of his staff were expected to use all evidence available, not simply the assessment rules to assure that property was reported at fair market value. Selling and marketing expenses, research and development costs and installation should be included when original cost is calculated. Original cost is a factor in determining net book value.

Daniel Pierce was appointed chief deputy assessor in early fall, 1977. He testified IBM's 1977 return was chosen for a more careful review because of past disputes between the assessor and IBM about valuation. The goal of the assessor's office was to consider all available information and determine the fair market value of personal property. Rules were sent with the tax forms to all taxpayers to establish some common reporting procedures. However, the assessor still had authority pursuant to statute to make appropriate assessments. Original cost as used in the rules of valuation included hard and soft costs. Pierce knew that many costs were not included in the manufacturing cost reported by IBM.

Richard Wandy, an expert in valuing leased data processing equipment and a senior assessment technician employed by the city of Hartford, Connecticut, was called as a rebuttal witness by plaintiff.

He testified that the manufacturing cost of data processing equipment does not reflect fair market value. Fair market value can be computed in a number of ways. The first is the cost approach, that is, what a willing buyer would pay a willing seller for the merchandise. Second is the market data approach, whereby equipment is valued at a rate at which comparable items are sold in the marketplace. Two other methods are the income approach and the multiplier approach. Wandy used all these methods in valuing leased equipment, but relied most on a current list price because it is the best indicator of value. Wandy was asked a hypothetical question of whether doubling the manufacturing cost of equipment would reflect the fair market value. He responded that the resulting price would be too low to represent fair market value and he generally used a multiplier of three.

Another rebuttal witness for the State, Peter Aranson, was a professor of economics at Emory University who analyzed the market study performed by Blumenthal. He concluded the study was not reliable because Blumenthal mixed the data sources and the size of the samples used for comparison and incorrectly assumed that characteristics of a large sample are shared by smaller portions of that sample. The latter assumption led Blumenthal to conclude that IBM was discriminatorily assessed at a higher per-unit cost than other companies.

An attorney representing IBM met with Pierce and Lafakis to discuss the 1977 return after it was filed to furnish additional information requested. The supporting documentation filed with the return included a multiple corporation recap sheet, a corporate balance sheet and a three-volume printout listing information on specific items.

Lafakis and Doody were also called as rebuttal witnesses for the State. Lafakis considered four methods for determining the value of IBM leased equipment: comparison method, retail selling price, capitalized rental income and manufacturing cost. He was most successful in obtaining the information necessary to apply a retail selling method. He claimed that he requested information from the attorney for IBM to apply to the other methods, but never received it. He also asked for information to rebut the presumption that the furniture and fixtures were also manufactured by IBM, but none was submitted. He increased their assessed value based on this assumption.

Doody testified that the assessor's office accepted additional information from taxpayers after they were notified of the preliminary assessment. After considering additional data and meeting with IBM's attorney, changes were made in the proposed assessments. He requested information about soft costs not included in the manufacturing costs but never received it. Identical assessment principles were

applied to all Cook County taxpayers, including IBM.

On appeal, IBM first contends that the value placed on its property by the assessor was improper because the assessor failed to follow the rules of valuation promulgated by him. It further contends that the trial court erred as a matter of law in finding that the rules were merely guidelines. The rule which IBM argues that the assessor was bound to follow is that which was sent to taxpayers with the tax forms. It provided in part:

> "The following rules apply to the preparation of the enclosed Personal Property Schedule:
>
> * * *
>
> Depreciable assets, Items Nos. 8 and 10 should be reported at 35% of Net book value (Net book value is determined by deducting accumulated depreciation from original cost.) Assets depreciated to less than 20% of their original value should be reported at 20% as long as they possess some degree of utility to the owner."

We do not agree with defendant's contention. The assessor is authorized by statute to publish rules pertaining to preparing the tax returns. Section 13 of the Revenue Act of 1939 provided:

> "The county assessor, board of appeals, board of assessors and the boards of review shall *make and publish reasonable and proper rules for the guidance of persons doing business with them and for the orderly dispatch of business.*
>
> In counties containing 1,000,000 or more inhabitants, the county assessor and board of appeals, jointly shall *make and prescribe rules and regulations for the assessment of property* and the preparation of the assessment books by the township assessors in their respective towns and for the return of such assessment books to the county assessor." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 120, par. 494.

■ In this case, we agree with the trial court's determination that the rules accompanying the return were merely guidelines for the preparation of the return. The heading preceding the method for valuation clearly indicates it is only a rule for the preparation of the return and was directed toward the taxpayer, not the assessor. On the other hand, the assessor must follow the statute in assessing personal property. The pertinent laws state:

> "Personal property shall be valued as follows: (1) All personal property, except as herein otherwise directed, shall be valued at 33-1/3% of its fair cash value." (Ill. Rev. Stat. 1977, ch. 120, par. 502.)

"It shall be the duty of the assessor to determine and fix 33-⅓% of the fair cash value of all items of personal property ***." Ill. Rev. Stat. 1977, ch. 120, par. 532.

In adjusting IBM's tax return, the assessor legitimately exercised authority granted by statute to fix assessed values. He is not required to follow rules pertaining solely to the preparation of returns, but instead is bound to follow the law and fix the value. *Little Sister Coal Corp. v. Dawson* (1970), 45 Ill. 2d 342, 259 N.E.2d 35.

■ Second, IBM contends the assessment was constructively fraudulent because the assessor arbitrarily doubled the reported values and disregarded recognized elements of value.

In *In re Application of Rosewell* (1983), 120 Ill. App. 3d 369, 374, 458 N.E.2d 121, the court discussed the concept of constructive fraud in valuation cases:

"Fraud in law will be inferred only where the evidence shows the property to have been grossly overvalued, the assessed valuation being reached under circumstances showing either lack of knowledge of known values or a deliberate fixing of values contrary to the known value. Only where the evidence clearly establishes that an assessment was made in ignorance of the subject property's value, on a judgment not based upon readily ascertainable facts, or on a designedly excessive basis will a finding of constructive fraud against the taxing authorities be entered."

A determination of whether a tax is constructively fraudulent depends on the facts and circumstances of each case. (*Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 387 N.E.2d 351.) Also, the assessor's judgment in placing a value on personal property is presumptively valid (*Illinois Bell Telephone Co. v. Rosewell* (1980), 82 Ill. App. 3d 975, 403 N.E.2d 662), and the taxpayer must prove by clear and convincing evidence that the assessment is fraudulent. (*In re Application of Rosewell* (1983), 120 Ill. App. 3d 369, 458 N.E.2d 121.) The trial court's decision will not be disturbed unless it is against the manifest weight of the evidence. *Consolidation Coal Co. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 465, 331 N.E.2d 122.

■ The evidence presented indicates that Pierce and Lafakis researched various techniques for assessing leased property and found actual selling prices for IBM equipment. All the witnesses who were with the assessor's office when the return was reviewed were familiar with various valuation methods and the elements of such methods. In addition to this knowledge, the assessor had the supporting documen-

tation submitted by IBM which consisted of a three-volume printout of relevant data. In fact, the trial court noted, "the evidence *** clearly establishes that the tax review was made with knowledge and a concern for ascertainable facts" and rejected IBM's argument that there was an absence of knowledge and honest judgment. We agree with the trial court and find that IBM did not clearly and convincingly prove that the assessor ignored recognized elements of value.

Furthermore, we find that doubling the value reported by IBM was not arbitrary. The assessor determined that fair cash value was three to five times greater than that reported by IBM. According to Lafakis, assessing the property at that amount was not correct and it was proper to assess it at a value in between. Also, doubling the value would not have upset the corporate tax planning scheme. We agree with the trial court's finding that these were rational bases on which to use a multiplier of two and that the assessor's action was not arbitrary or capricious.

■ Regarding the second issue, IBM also argues that the evidence shows the assessment was disproportionately higher than assessments for similar property. However, in rendering its decision, the trial court specifically noted that Blumenthal's testimony regarding this issue was not credible. The court concluded that Blumenthal was not an independent expert and his testimony lacked independence of judgment. It was further noted that Aranson's testimony as to defects in Blumenthal's study was unimpeached and convincingly pointed out defects in the report. It is the duty of the trial court to judge the credibility of witnesses and the weight to be given their testimony. In view of the evidence, we will not disturb the trial court's decision on this matter.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.