(No. 25661.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.*
THE COMMONWEALTH EDISON COMPANY, Appellee.

*Opinion filed February 14, 1941—Rehearing denied April 2, 1941.*

FARTHING and WILSON, JJ., dissenting.

THOMAS J. COURTNEY, State's Attorney, (JACOB SHAMBERG, MARSHALL V. KEARNEY, and WILLIAM P. KEARNEY, of counsel,) for appellant.

TAYLOR, MILLER, BUSCH & BOYDEN, and WILSON & McILVAINE, (FRANCIS X. BUSCH, PRESTON BOYDEN, CASSIUS M. DOTY, and STEPHEN A. MITCHELL, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant sued appellee in the circuit court of Cook county in an action in debt to recover $2,748,362.31 as unpaid balance of personal property taxes assessed for the year 1932. Appellee denied all indebtedness and alleged the assessments were arbitrary, excessive, illegal and fraudulent and that it had in fact paid more tax than legally due. Special defenses hereinafter referred to were also urged.

The court found for the defendant, the appellee. The People have appealed.

The total amount of the 1932 taxes extended against appellee was $6,681,019.41. Appellee paid $3,932,657.10, leaving a balance of $2,748,362.31. Here it is conceded that $499,442.22 of the tax sought was produced by excessive rates; that the boilers and stacks of appellee had been assessed both as real estate and as personal property and had been paid as real estate taxes, and that $600,535.11 should on that account be deducted from the unpaid balance sued for, leaving the balance in dispute $1,659,526.98. This disputed balance consists of two items, $690,831.48, levied upon appellee's underground conduits, assessed as personal property, and $968,695.50 produced, as appellee alleged, by reason of arbitrary, excessive, illegal and fraudulent valuations of its tangible personal property. Appellee contended below, and the court found, that it had paid more than $11,000 in excess of all personal property taxes legally assessed.

Appellee filed schedules, thirty-five in number, one each for the thirty-five towns in which their property is located, showing its fixed capital of all kinds as amounting to $308,865,100.85. From this amount it deducted the boilers and stacks twice assessed, amounting to $33,281.417.19. Its schedules also included its underground conduits account showing the total cost thereof to be $140,511,234.28. Deducting this amount as non-assessable, left a total fixed capital of $168,353,866.37. This amount was depreciated in the schedules at thirty-one per cent, amounting to $54,-151,646.87, leaving a net depreciated value of $114,202,-219.50. Adding to this the sum of $3,427,875.05 as representing seventy-five per cent of the original cost of materials and supplies including coal in storage, the total value of the tangible personal property returned by appellee was fixed at $117,487,974.18. This amount equalized at

thirty-seven per cent, as was the custom in that county, resulted in a taxable value of $43,470,550.45.

The assessor assessed appellee's tangible personal property on the basis of the total book value at cost, as shown by the company's books which, as we have seen, was $308,865,101. From this certain eliminations, but not including the conduits, were made, amounting to $74,823,112, and leaving the original cost of the tangible personal property of appellee, as of April 1, 1932, $234,041,989. From this the assessor deducted a flat twenty per cent for depreciation and added thereto seventy per cent of the original cost of coal and supplies on hand, bringing the total value of appellee's tangible personal property subject to taxation to $190,100,155, which, equalized at thirty-seven per cent, resulted as a basis for the assessment in the sum of $70,-337,058. On appeal from the assessment the board of appeals eliminated certain items, leaving the net sum taxable of $69,719,725, as against $43,470,550.45 as returned in appellee's schedules.

The questions presented here are: (1) Whether the underground cement conduits of appellee are assessable as tangible personal property, and (2) whether the flat allowance of twenty per cent of the net cost of acquisition as depreciation constituted a valid assessment or was arbitrary guesswork, lacking in required uniformity and amounting to fraud in law.

Appellant insists that the underground conduits are tangible personal property and, as such, are assessable by the county assessor. It is argued that such conduits represent a plant investment by means of which appellee does business in certain portions of the city. On the other hand, appellee insists that the conduits do not represent any tangible personal property subject to taxation but represent merely the cost of its compliance with the requirements of certain ordinances enacted by the city in the exercise of

its police power for the benefit of the general public. It is conceded that the assessor has authority to assess only tangible property. This is the rule. (*Illinois Central Railroad Co.* v. *Carr*, 302 Ill. 172; *National Reserve Ins. Co.* v. *Shipton*, 314 id. 472.) The intangibles of utilities are assessable only by the State Tax Commission. *People* v. *Wyanet Electric Light Co.* 306 Ill. 377.

The ordinance of the city of Chicago under which appellee operates, by section 2 thereof, provides: "All such lines of wire or other electrical conductors, except those passing through the tunnels or upon viaducts within the following boundaries, namely, [naming certain territory in which the conduits here involved were constructed], shall be placed in underground conduits." This section also requires that utilities at all times keep on file with the commissioner of public works plans showing the location of such conduits, numbers thereof, and the wires therein, and shall, before adding thereto, file with the commissioner of public works a plan showing where each one is to be laid. Section 4 provides that no conduits shall be constructed until there is filed with the commissioner of public works a plan approved by that department.

Counsel for appellant say this is but a contract ordinance. It seems clear, however, that it was passed in the exercise of the police power. An ordinance which grants the use of public streets to a utility and imposes terms and conditions upon the exercise of the benefit of such grant, arises under and is in the exercise of the police power conferred upon the city. Though it may be a franchise ordinance granting a license for the use of the streets, it still constitutes the exercise of the city's legislative authority. Where it contains regulatory terms, such terms find their justification in the city's police power and constitute compulsion. As is pointed out in 2 McQuillin on Municipal Corporations, ((2d ed.) chap. 15, sec. 673, p. 541,) it is no

objection to an ordinance that it combine contractual and police regulations, and the fact that contract provisions are found therein does not change the result or effect of the essential character of the police power exercised. This text is supported by *Hayes* v. *Michigan Central Railroad Co.* 111 U. S. 228, 28 L. ed. 410, and *Pittsburgh, Cincinnati and St. Louis Railway Co.* v. *Hood,* 94 Fed. 618 (6CCA.)

From the evidence it appears that the conduits are a much more expensive way of transmitting electrical power than poles and wires, and it is apparent that it is of benefit to the public generally to remove such poles and wires from over and upon the streets by placing the wires in underground conduits. So it is clear that the ordinance under which these conduits were constructed was a police power ordinance, and that appellee was required by it to construct underground conduits.

Briefly described, these conduits are masses of solid concrete laid lengthwise under the city streets, constructed by excavating ditches, pouring in raw concrete and placing a line of concrete tile thereon and more concrete over it, thus giving apertures or conduits through which the wires may be drawn. At places in the street manholes are constructed so that workmen may reach the wires leading through the conduits.

Appellee argues that while the account of the cost of construction of these conduits was carried on its books in its capital account, for the purpose of a required showing of capital structure for rate-making purposes, the only interest it has in those conduits is the right of user, and that it does not own any tangible personal property interest therein. The People, on the other hand, argue that these conduits are tangible personal property. They rely upon *People* v. *Upham,* 221 Ill. 555. In that case certain tunnels had been constructed under the streets, by a telegraph company and a tunnel company, and it was held that such

tunnels constituted certain rights and privileges belonging and pertaining to the soil in which they were constructed, apart from the fee of the streets which was vested in the city, and that they fell within the designation of "real estate" as defined by the statute, and should be assessed by the assessor. That case does not support the contention of appellant in its action in debt here, to recover personal property taxes.

While the question of assessability as tangible personal property of privately owned conduits, such as here involved, has not been directly passed upon by this court, the principles involved have been heretofore considered. In *Chicago Railways Co.* v. *Gill*, 366 Ill. 605, a tax had been levied against the railway company's interest in certain tunnels under the Chicago river. These tunnels were deepened and lowered pursuant to the requirements of the city ordinances. The expense of the work was to be met by the street railway company with the provision, however, that in event the city took over the railway line, credit was to be given to the company for this expenditure. It was there held that those tunnels did not represent tangible property subject to assessment by the assessor.

In *People* v. *Chicago Railways Co.* 369 Ill. 128, it was held that a portion of a pavement required to be laid by a street railway company along the line used by it, is not taxable as tangible personal property.

The question whether the property right of appellee in these conduits is to be assessed as real estate under the holding in the *Upham case,* is not before us, since the tax sought to be collected here is a tax on tangible personal property. We know of no authority holding that conduits, such as these, which are laid under the requirement of an ordinance enacted in furtherance of the police power, are to be assessed as tangible personal property, and it seems clear to us that they cannot be. The court did not err in sustaining appellee's contention regarding the conduits.

Was it error to hold that the flat over-all allowance of twenty per cent of the cost of acquisition of appellee's tangible personal property was arbitrary and illegal, as not based upon any method used in the valuation of the personal property of other like corporations? It is admitted that the assessor, as a basis of valuation of appellee's property, accepted the latter's schedules of cost. It is also admitted that no inspection was made by the assessor of any of the property of appellee for the purpose of valuation thereof. The testimony of the assessor's deputy, who made the assessment, was that he took appellee's balance sheet and statement of its capital accounts and allowed an arbitrary depreciation of twenty per cent of the original cost; that this applied to all items except materials and supplies such as coal and the like, and as to them he allowed a thirty per cent depreciation from the original cost, and debasing the result thereof thirty-seven per cent, he arrived at the value fixed for purposes of taxation. It is also undisputed that the general practice of the assessor in the assessment of machinery and equipment of corporations had been to deduct from the book value as depreciated by the taxpayer, a further debasement generally of about forty per cent, and then take thirty-seven per cent thereof as the fair cash value for assessment purposes. It is clear from the evidence in this case that the assessor, in assessing appellee's personal property, did not follow this procedure but, without inspection, refused to accept appellee's depreciation as shown by its books but made the gross reduction of twenty per cent for depreciation from, not a depreciated value, but the original cost price. Clearly, such a method of valuation, as compared with the method used as to other like property, violated the constitutional and statutory requirements as to uniformity. Section 24 of the Revenue act, (Ill. Rev. Stat. 1931, chap. 120, par. 24,) as in force at the time this assessment was made, requires that the assessor, in valuing property of corporations, shall be gov-

erned by the same rule of uniformity that he adopts as to values in assessing other personal property.

This court has repeatedly called to the attention of taxing bodies the necessity for observance of this requirement. (*People* v. *Gillespie,* 358 Ill. 40; *People* v. *Grand Trunk Western Railroad Co.* 357 id. 493; *People* v. *St. Louis Bridge Co.* id. 245; *People* v. *Chicago, Burlington and Quincy Railroad Co.* 300 Ill. 399; *People* v. *Keokuk and Hamilton Bridge Co.* 287 id. 246; *People's Gas Light and Coke Co.* v. *Stuckart,* 286 id. 164.) It is clear that appellee's property was not assessed on the basis of debasing factors used in the valuing of property of other corporations; nor was that valuation fixed on the same proportional value as was the property of other corporations within Cook county, and the court did not err in so finding.

Counsel for appellant say that courts have no jurisdiction to listen to appellee's complaint in this case because it took an appeal to the board of appeals, where the methods used by the assessor were approved. Appellant relies, in support of this contention, on *Republic Life Ins. Co.* v. *Pollak,* 75 Ill. 292, *New York Stock Exchange* v. *Gleason,* 121 id. 502, and other cases, where the rule is laid down that fraud cannot be presumed but must be proved by sufficient evidence, and that the fact of over-valuation is not necessarily evidence of fraud. That is the rule. It is also the rule that an assessment may be so excessive and made under such circumstances as to show that it was not the result of the honest judgment of the assessing officer. Such amounts to fraud in law. This court in the early case of *Pacific Hotel Co.* v. *Lieb,* 83 Ill. 602, held that a court of equity will not interfere to enjoin the collection of a tax merely because the property has been assessed at a greater valuation than the court would have fixed upon it; but where the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation—must reasonably have known that it was excessive—

such is accepted as evidence of fraud on his part and courts may be called upon to interpose.

Counsel for the appellant argue that the assessor is not bound by the items of valuation stated in the schedules but is empowered to fix the fair cash value of those items without regard to the amount returned, and this is true, but he has a duty to value the property by the exercise of honest judgment, and this with due consideration of the constitutional injunction pertaining to uniformity of taxation. No inspection was made by the assessor. No attempt was made to fix the fair cash value of appellee's personal property but the assessor applied to the undepreciated original cost of that property as shown by appellee's books, the arbitrary depreciation of twenty per cent. It is apparent from the examination of this record that the assessment made against appellee was discriminatory.

An assessment which discriminates against a taxpayer violates the requirement of section 1 of article 9 of our constitution that the taxpayer shall pay a tax in proportion to the value of his or her property. (*People* v. *Chicago, Burlington and Quincy Railroad Co. supra; Bureau County* v. *Chicago, Burlington and Quincy Railroad Co.* 44 Ill. 229.) This principle was applied likewise in *People* v. *Wiggins Ferry Co.* 357 Ill. 173, *People* v. *St. Louis Bridge Co. supra, and People* v. *Gillespie, supra.* There was introduced in evidence in this case the assessor's manual in which he states the methods of making the assessment for the year here involved. It is therein set out by section 62(z) that where the valuation of machinery and equipment are taken at book value less an average allowance of not to exceed forty per cent, and the basis of accounting is that followed in making income tax returns, the fair cash value of such property will be accepted in accordance with such plan. The evidence here shows that the depreciation of appellee's property as shown by its return was thirty-one per cent and that method was followed in making income

tax returns and accepted for that purpose, yet the assessor in this case did not follow either the method used in making income tax returns or indicated in the assessor's manual.

The circuit court of Cook county did not err in finding the issues for appellee, and its judgment is affirmed.

*Judgment affirmed.*

FARTHING and WILSON, JJ., dissenting: We do not believe that this property could be held to be real estate.