(No. 36313.

THE PEOPLE *ex rel.* Leonard O. Reinhardt, County Collector, Appellant, *vs.* JAMES W. MCROBERTS *et al.,* Appellees.

*Opinion filed May 19, 1961,*

John M. Karns, State's Attorney, and Sam S. Pessin, special prosecutor, both of Belleville, for appellant.

John J. Hoban, of East St. Louis, for appellees.

Mr. Justice Solfisburg delivered the opinion of the court:

Plaintiff, the county collector of St. Clair County, prosecutes this direct appeal from a judgment of the circuit court of that county which found for defendants, James W. McRoberts and John J. Hoban, doing business as McRoberts and Hoban, in the plaintiff's suit to collect unpaid personal property taxes for the years 1951 through 1956, inclusive. Defendants were members of a law firm which

was admittedly possessed of taxable personal property during the years in question, but in defense to the action they asserted that the assessment at local level was arbitrary and not based on a consideration or appraisal of their property, and that the multiplier supplied by the Illinois Department of Revenue to equalize assessed valuations was calculated and determined in such a manner as to make the assessments against their property fraudulent. We have jurisdiction because the revenue is involved.

The factual background from which the action arises shows that, in each of the years in question, the assessor did not "call at the office, [or] place of doing business" and "require * * * a correct statement of the taxable property" as provided in section 48 of the Revenue Act of 1939. (Ill. Rev. Stats. 1951, 1953, 1955, chap. 120, par. 529.) Instead, as permitted by section 49 of the Revenue Act, the assessor mailed to defendants a printed blank schedule upon which to list their personal property. (Rev. Stats. par. 530.) Defendants concede that these schedules were received; however, they did not make out a list of their property, under oath, and return it to the assessor as section 51 of the Revenue Act requires. (Rev. Stats. par. 532.) As a result, and as authorized by section 54 in the absence of a sworn schedule, the assessor listed defendants' personal property "according to his best knowledge, information and judgment, at its fair cash value," and added to the valuation "an amount equal to fifty per cent of such valuation." (Rev. Stats., par. 535.) Thus, with the fifty per cent penalty, defendants' property was assessed at $960 for the years 1951, 1952, 1953 and 1954, and for the years 1955 and 1956, when defendants owned two automobiles, was assessed at $3005. The common multiplier, or equalization factor, furnished by the Department of Revenue raised these valuations to $1300 in the first four years, and to $4007 in the last two years. Local assessments were published annually but defendants filed no objections or com-

plaints, nor did they pursue the administrative remedy for a review of the assessments accorded them by the Revenue Act. Their refusal to pay the taxes levied on the basis of the assessments described precipitated this action.

The law presumes that in fixing the value of property the taxing authorities have properly discharged their duties and that the tax is just. And where one objects to the valuation placed upon his property, he has the burden of proving by clear and convincing evidence that an excessive valuation is the result of some improper, corrupt or illegal motive on the part of the assessing authorities, or that the valuation is so grossly excessive as to be constructively fraudulent. (*People ex rel. Smith* v. *Coen*, 415 Ill. 73; *People ex rel. Toman* v. *Marine Trust Co.*, 375 Ill. 488; *People ex rel. Bracher* v. *Millard*, 307 Ill. 556.) Insofar as the conduct of the local assessing authorities is concerned proof of such nature has not been made in the present record and, moreover, defendants' utter failure to make a showing of the taxable property they possessed, and its value, precludes any determination of whether the assessments were either actually or constructively fraudulent.

To sustain their attack on the assessment at local level defendants rely chiefly on the failure of the assessor or one of his deputies to visit their place of business and to require them to make a correct statement of their taxable property as provided by section 48 of the Revenue Act. It has long been held, however, that the failure of the assessor to personally call on persons for a list of their taxable property, as well as the failure to personally view real property, is merely an irregularity and is not sufficient to defeat the tax. (*Board of Supervisors of Dupage County* v. *Jenks*, 65 Ill. 275, 287; and see: *Grant Land Ass'n* v. *People ex rel. Hanberg*, 213 Ill. 256, 259; *People ex rel. Smith* v. *Coen*, 415 Ill. 73, 79.) The *ratio decidendi* is, of course, that ministerial officers cannot defeat the collection of taxes by such omissions, whether made wilfully or from careless-

ness. As stated in *Dunham* v. *City of Chicago,* 55 Ill. 357, at 361: "Such officers may make themselves amenable to the law, * * * but can not thus stop the wheels of government." See also: *Bistor* v. *McDonough,* 348 Ill. 624, 635.

Nor does the record sustain defendants' claims that their property was arbitrarily assessed and that the assessments were not based on a consideration and appraisal of their property. We are not dealing here with persons who delivered a sworn schedule of their property to the assessor so that a normal assessment could be made, but with persons who wilfully refused and failed to file a schedule. In such case section 54 of the Revenue Act authorizes the assessor to list the property of such persons at its fair cash value "according to his best knowledge, information and judgment." The proof here shows that one assessor, who expressed the opinion that defendants' property had been assessed at full value, had personal knowledge of the property in defendants' office, and that, for the years 1955 and 1956, information concerning the ownership of automobiles supplied to the assessor by the Secretary of State was used in determining the assessments. Under the circumstances of this case, we cannot say that the assessor abused the broad discretion granted to him by section 54, nor, in the total absence of proof as to the taxable property actually possessed by defendants, and its value, can we say that the assessment figures arrived at were either actually or constructively fraudulent.

Looking next to defendants' attack upon the manner in which the Department of Revenue determined the multiplier, or equalization factor, for the years in question, it is to be noted that here again the presumption obtains that the assessments were valid thus placing the burden on defendants to show that the assessments or the taxes derived therefrom were excessive. (*People ex rel. Ruchty* v. *Saad,* 411 Ill. 390; *People ex rel. Schmulbach* v. *City of St. Louis,*

408 Ill. 491.) The legislature, in whom rests the exclusive power of determining the manner in which to obtain uniformity in assessed valuations, has committed to the Department of Revenue the duty of determining the equalization factor and has likewise prescribed the manner in which it shall be determined. (Ill. Rev. Stats. 1951, 1953, 1955, chap. 120, par. 627.) Where the Department has performed its duty in accordance with the requirements of the constitution and the law, its actions cannot be successfully assailed unless shown to be actually fraudulent or to have resulted in such an excessive overvaluation as to amount to fraud. (*People ex rel. Ruchty* v. *Saad,* 411 Ill. 390.) There is no such showing in this case.

As we have pointed out before, there is no proof as to defendants' property or its value, and thus there is no foundation for a claim or finding that the equalization factor resulted in a fraudulently excessive overvaluation. What defendants principally contend, however, is that the equalization factor for personal property assessments was not properly determined in that it was not arrived at by comparing transactions and sales of personal property with the local valuations, but by considering real-estate transactions only, and then assuming that personal property was equally underevaluated. Stated differently, the essence of defendants' contention is that the Department was guilty of improper conduct when it failed to differentiate between different classes of property, *viz.*, personal property and real property, in arriving at its equalization factor. This contention, however, fails in several respects.

Section 146 of the Revenue Act, (Ill. Rev. Stats. 1951, 1953, 1955, chap. 120, par. 627,) does not require the Department to classify or differentiate between different classes of property in its equalizing process, and we held in the *Saad case* (411 Ill. at 399-400) that in light of the legislature's action of repealing sections 147 and 148 of the act, effective as of January 1, 1946, (see: Ill. Rev. Stat.,

1945, chap. 120, pars. 628, 629,) the failure of the Department to classify or differentiate between classes of property did not support a claim that determination of the equalization factor had been arbitrary and improper. In addition, the section does not provide, as defendants' argument assumes, that the ratio between full, fair cash value and the locally assessed value of personal property must or can only be determined from an analysis of sales of personal property. The statutory language is, rather: "By means of a comparison of assessed valuation, * * * and *estimated* full, fair cash values established through the analysis of property transfers, *property appraisals, and such other means as it deems proper and reasonable,* the Department shall annually ascertain * * *." (Emphasis supplied.) The proof here, as may be seen presently, shows that the Department did in fact use such reasonable and proper means as were available.

Finally and most important, the record does not support defendants' claim that the equalization factors in this case were determined solely on the basis of real-estate transactions, plus an assumption that personal property was equally underevaluated. An official of the Department did testify there was an assumption, based upon the uniformity requirement of the constitution, that personal property and real property were assessed locally at the same level, and he likewise conceded that while there was an extensive analysis of real-estate sales, there was no comparable analysis of personal property sales because there were no State or county records maintained that would indicate fair cash market sales prices. From this further testimony, however, it appears that assessors are required to meet in advance of the assessment date, April 1, to determine valuation standards to be applied uniformly throughout the county, that a member of the Department usually attends such meetings, and that the Department receives a copy of the valuation standards adopted. By the use of appraisal guides for auto-

mobiles, livestock reports and the like, the Department is able to determine the relationship between local values and full values for such items, and the witness explained that spot checks were in fact made to determine the ratio between the two values. From such spot checks and from analysis of real estate transactions, the Department likewise made checks on the relationship of the assessed valuation of personal property to that of real property. With regard to the instant case, the witness testified that study revealed a uniformity of assessment for real and personal property in St. Clair County, that local assessments were not full value, and that a multiplier was necessary. From this evidence, we conclude the Department used reasonable and proper means within the meaning of the statute, and that the equalization factor was not improperly or wrongfully established.

The single authority cited by defendants in support of their position is *In re Chicago Railways Co.,* 79 F. Supp. 989 (D.C.N.D. Ill. 1948), which is an order entered in a bankruptcy proceeding wherein one of the court's conclusions of law was that a multiplier furnished by the Department was void as to personal property because it was based solely on real estate transactions. While the order does not give us the benefit of the proof upon which the court's finding and conclusion were based, it is enough to say that the proof in this record is sufficient to distinguish the two cases on their facts. Moreover, when an appeal was taken from the order of the district court, the latter's pronouncements on the multiplier were held for naught by the decision of the circuit court of appeals which found that consideration of the propriety of the multiplier was not necessary to an adjudication of the merits of the case. See: *In re Chicago Railways Co.,* (7th cir.) 175 F.2d 282.

For the reasons stated, it is our opinion that the judgment for defendants was erroneous. Accordingly, the judgment is reversed and the cause is remanded to the

circuit court of St. Clair County with directions to enter judgment for the plaintiff. See: *People* v. *Holmstrom,* 8 Ill.2d 401, 407; *Ottawa Gas Light and Coke Co.* v. *People,* 138 Ill. 336, 345.

*Reversed and remanded, with directions.*