(No. 54796.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. INTERNATIONAL BUSINESS MACHINES COR-PORATION, Appellee.

*Opinion filed February 19, 1982.—Rehearing denied*
*March 25, 1982.*

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Deputy State's Attorney, and Henry A. Hauser, Assistant State's Attorney, of counsel), for the People.

Sidley & Austin, of Chicago (J. Robert Barr, Frederic J. Artwick, and Joanne M. Frasca, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

The State brought an action against defendant, International Business Machines Corporation (IBM), for nonpayment of $2,595,394.86 in personal property taxes pursuant to the Cook County assessor's 1976 assessment. The circuit court of Cook County found constructive fraud in the assessor's 1976 personal property assessment and entered judgment in favor of IBM. The appellate court affirmed (93 Ill. App. 3d 564), and we granted the State leave to appeal.

The issue is whether the trial court's finding of constructive fraud in IBM's 1976 personal property tax assessment is supported by clear and convincing evidence.

The parties stipulated to the admission of many facts and documents into evidence which were thoroughly enumerated by the appellate court. To summarize briefly, for the years 1972 through 1976, IBM timely filed corporate personal property tax returns which showed valuations for all classes of personal property owned by IBM and located, or having a business situs, in Cook County. For 1976, the assessor entered assessed valuations for all classes of personal property at IBM's locations in the precise amount set forth on its return. However, the assessor increased the value of the portion of line-item 10, entitled "machines & tools used by IBM & with customers," attributable to One IBM Plaza, from $26,709,080 to an assessed value, before equalization, of $47,376,414. IBM arrived at its valuation for line-item 10 in accordance with the 1976 Rules of Valuation published by the assessor. Those rules provided:

> "Depreciable assets, Item Nos. 8 and 10 should be reported at 35% of Net book value (Net book value is determined by deducting accumulated depreciation from original cost.) Assets depreciated to less than 20% of their original value should be reported at 20% as long as they possess some degree of utility to the owner."

The assessed value entered by the Cook County collector was approximately 62% of the net book value of IBM's

machinery and equipment as earlier quoted. IBM made available to the assessor its 1976 inventory of data processing machines with its 1976 personal property tax return. The inventory consisted of a three-volume computer printout showing the description, type and serial number, manufacturing cost, depreciated manufacturing cost, and the date of manufacture for each item of machinery and equipment owned by IBM and leased to customers located in Cook County on April 1, 1976.

IBM paid personal property taxes to the Cook County collector for 1976 in the amount of $3,591,925.68 based upon its assessment of personal property. The State sought an added $2,595,394.86 based on its assessment of defendant's personal property.

The only evidence offered by the State was admitted pursuant to stipulation. It consisted of the 1976 tax bill, IBM's 1976 personal property tax return and supporting documents, a worksheet of the assessor indicating the increase in valuation made by him, and a stipulation that $2,595,394.86 had not been paid. IBM offered the following documents, pursuant to stipulation, which the court admitted into evidence: The three-volume inventory printout described above, IBM's personal property tax returns for 1972-76 and supporting documents filed therewith, and the Rules of Valuation of the Cook County assessor for each of the years 1972 through 1976.

IBM also offered the evidence deposition of James Meehan, which was admitted into evidence without objection. Meehan was chief of the personal property division of the Cook County assessor's office and was principally responsible for the assessment of IBM's personal property located in Cook County in 1972 through 1976. Meehan testified that on or about April 1, 1976, taxpayers were sent the 1976 Rules of Valuation along with personal property tax returns. The rules informed taxpayers of the procedure that should be followed in valuing their personal property.

Meehan stated that for every year from 1972 through 1976 he calculated an increase that brought IBM's total reported valuation for all personal property up to the previous year's total assessed valuations. That total increase was added on to line-item 10. Meehan testified that $21,667,334 had to be added to bring the total 1976 valuation figure reported by IBM up to the 1972 through 1975 levels. He then stated that for some unknown reason he deducted $1 million from the increase, bringing it to $20,667,334. This amount was then added to line-item 10.

Meehan also testified that in 1972 IBM had submitted an inventory printout similar to the one in the instant case which he did not attempt to study because it would have been a "back-breaking job" and that one had been offered to him for the year 1973 which he refused to inspect. The 1976 computer printout was not submitted to the assessor, but was available to him. Meehan, however, did not attempt to obtain the printout nor did he tell IBM's attorney what information would satisfy him. Rather, he used the previous year's valuation figure. Meehan also stated that IBM's attempts to explain its 1976 schedule were not "sufficient under the circumstances." As the appellate court noted, Meehan was unable to identify any additional information that could be used to verify IBM's reported valuation.

Richard Norcross, a tax analyst for IBM who prepared IBM's Cook County personal property tax returns in 1976, testified as to how the three-volume printout containing the personal property information was compiled. Following compilation of that information, the total figures in the printout were transferred to IBM's consolidated balance sheet. Norcross testified that these totals were used in completing the multiple-recap sheet submitted along with the 1976 return. He testified that the line-item 10 valuation was based upon (1) data processing machines with customers, (2) uninstalled machines at branch offices and warehouses, (3) IBM diagnostic tools at branch offices and

warehouses, and (4) data processing machines at branch offices. The actual figure for line-item 10 was arrived at by taking 35% of the net book value of those items in accordance with the assessor's rules. Norcross also testified that the valuations for all the other line items of property on the multiple-recap sheet were determined by following a similar procedure, in each case applying the proper percentage in accordance with the Rules of Valuation. The total valuations for each class of property for all locations were then transcribed in the 1976 personal property tax schedule under "Owner's Valuation."

The return, after being reviewed, was sent to John Dixon, director of excise and property taxes at IBM, who signed it. Dixon testified as to how IBM arrived at the values for machinery and equipment. He explained that the original cost figure represented labor, overhead and material that was needed in fabricating, assembling and testing each of the units of equipment. Dixon testified that the figures for depreciated cost value on the printout were arrived at by deducting accumulated depreciation from the original cost. He stated that the depreciated cost reported on the personal property tax return was never less than 20% of original cost, as per the assessor's Rules of Valuation.

The circuit court found that IBM had correctly reported the value of property on its 1976 return in accordance with the assessor's Rules of Valuation and had offered to support its valuations with detailed data. It found that the assessor arbitrarily increased IBM's assessment to that of the previous year, minus an unexplained $1 million. The court concluded that this constituted constructive fraud, and that IBM had rebutted the presumption that the assessment was proper with "clear and sufficient evidence."

As noted by the appellate court, a property assessment for tax purposes will be reviewed only upon a showing of fraud or constructive fraud. (*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 323; *People ex rel.*

*Nordlund v. S.B.A. Co.* (1966), 34 Ill. 2d 373, 376.) An assessment is presumed proper; the taxpayer must establish by clear and convincing evidence that fraud has been committed in the valuation of his property. *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104; *People ex rel. Reinhardt v. McRoberts* (1961), 22 Ill. 2d 282, 285; *People ex rel. Johnson v. Robison* (1950), 406 Ill. 280, 283.

Some guidelines have been established for the proof necessary to establish constructive fraud. Assessments that are disproportionately higher than those for similar property or assessments that are based on the assessor's own private opinion showing a lack of knowledge or a lack of honest judgment are indicative of constructive fraud. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104-05; *People ex rel. Nordlund v. Lans* (1964), 31 Ill. 2d 477, 479; *Aldrich v. Harding* (1930), 340 Ill. 354, 358; *People ex rel. Carr v. Stewart* (1924), 315 Ill. 25, 30.) Similarly, overvaluation may be so excessive, under some circumstances, as to justify the conclusion that it was not honestly made and, therefore, is constructively fraudulent. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104-05; *People ex rel. Paschen v. Hendrickson Pontiac, Inc.* (1957), 12 Ill. 2d 477, 480; *People ex rel. Callahan v. Gulf, Mobile & Ohio R.R. Co.* (1956), 8 Ill. 2d 66, 69-70.) Once the presumption of the validity of the assessment is overcome, it becomes incumbent upon the assessor to produce evidence to justify the assessment. (*People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88, 100.) Moreover, a determination of whether the assessor has committed constructive fraud depends upon the facts and circumstances of each particular case. *People ex rel. Nordlund v. S.B.A. Co.* (1966), 34 Ill. 2d 373, 378; *Chicago & North Western Ry. Co. v. Department of Revenue* (1955), 6 Ill. 2d 278, 283-84, *cert. denied* (1956), 351 U.S. 950, 100 L. Ed. 1474, 76 S. Ct. 844.

The State argues that the trial court's finding of construc-

tive fraud in IBM's 1976 personal property tax assessment was erroneous and unsupported by clear and convincing evidence. It contends that the assessor's valuation did not constitute arbitrary behavior indicative of constructive fraud. To support this contention, the State points to IBM's failure to challenge the assessment at the 1971 level until 1976, the failure by IBM to clear up the uncertainty as to what its figures really meant, and IBM's application of 35% of the net book value, which it alleges did not accurately reflect the fair cash value of its personal property.

We find no merit to these points. We first note that IBM did not suddenly arrive at a valuation $20 million lower in 1976. IBM had submitted a valuation figure for each of the years 1972 through 1975 that was raised approximately $20 million by the assessor in order to reach the 1971 value. IBM's decision to first challenge the assessment for 1976 in no way establishes that the valuation, which automatically placed its personal property at the previous year's level, was justified.

As to IBM's failure to clear up the uncertainty as to what its figures meant and its use of an allegedly improper method in arriving at a 1976 valuation, we note that the three-volume computer printout was available to the assessor. The printout listed the name, customer number and address of each customer that leased IBM equipment in Cook County. The printout further contained a description of each piece of leased equipment, its type and serial number, manufacturing cost, depreciated cost, and date of manufacture. The figures in the printout were used to compute the valuations entered on IBM's consolidated balance sheet, multiple-recap sheet, and return schedule in 1976. Further, these figures were reached according to the assessor's Rules of Valuation, rules which Meehan testified the assessor's office followed and rules which were sent to all taxpayers along with the personal property tax schedules. These rules required each taxpayer to value its machinery

and equipment at 35% of its net book value on its personal property tax schedule.

The State, in effect, is arguing that IBM should have ignored these rules and used another method in arriving at its valuation. Yet, the assessor neither looked at the printout nor advised IBM's attorney what information would satisfy him. Instead, according to Meehan's own testimony, the 1976 assessment was based solely on the total valuation for all IBM's personal property entered in 1975 (which in turn was based on the total valuation of the previous years). There was no attempt by the assessor to make its assessment based upon the depreciated value of IBM's personal property. Nor did the assessor present any evidence indicating that the prior year's valuation reflected a more accurate portrayal of the fair cash value of IBM's personal property than the valuation reached by using the net book value prescribed by the assessor's own rules. Indeed, the assessor failed to demonstrate that the previous year's valuation bore any relationship to the fair cash value of the property. See *People ex rel. Rhodes v. Turk* (1945), 391 Ill. 424, where this court stated in relation to a formula used by the assessor to determine the value of a 60-year-old building:

> "There is nothing in the record to explain the formula. *** The assessor does not pretend to give an independent estimate of fair market value. By his sole reliance upon a formula not explained, and not shown to have any relation to market value, the appellee is in the position of having no proof of value in the record, except what appears upon the assessor's books." 391 Ill. 424, 426.

See also *People ex rel. Wangelin v. Gillespie* (1934), 358 Ill. 40, 46-47, and *Aldrich v. Harding* (1930), 340 Ill. 354, 358-59 (cases in which assessments made solely on the basis of assessments from previous years, where the assessor refused to consider evidence reflecting recognized elements of value, were held to be arbitrary and constructively fraudulent).

The State also argues, based on *Illinois Bell Telephone Co. v. Rosewell* (1980), 82 Ill. App. 3d 975, that the assessor may properly rely on the prior year's assessment when the schedules submitted by the taxpayer were unacceptable. However, as recognized by the appellate court in this case, *Illinois Bell* is clearly distinguishable. There, it was disputed whether the taxpayer supplied the assessor with proof of value based on any standard. Moreover, in that case, the taxpayer's own records showed the actual cash value of its personal property was over $200 million more than it reported on its tax schedule for the year in question. Here, IBM made available to the assessor a comprehensive list detailing the value of its personal property as set out on its return, a list compiled pursuant to the assessor's own rules. (Compare *People ex rel. Tedrick v. Allied Oil Corp.* (1944), 388 Ill. 219, and *People ex rel. Reinhardt v. McRoberts* (1961), 22 Ill. 2d 282, where the assessor's valuations were not arbitrary and where the taxpayers failed to introduce any evidence supporting their reported valuations.) In addition, in this case the assessor arbitrarily and without explanation reduced the assessment by $1 million. As Meehan testified, "I just can't account for it."

The State argues that the trial court incorrectly ruled that the assessor was bound by the rules and valuation in assessing the property. As the appellate court noted, the trial court did not so rule; the trial court merely noted that the assessor failed to follow the instructions it mailed to taxpayers, but that the taxpayer IBM did follow them.

In *People v. Commonwealth Edison Co.* (1941), 376 Ill. 70, this court held that a personal property assessment in which the assessor arbitrarily cut the taxpayer's reported depreciation from 40% to 20%, where the 40% depreciation had been determined in accordance with the assessor's own rules of valuation, constituted constructive fraud. The court stated:

"Counsel for the appellant argue that the assessor

is not bound by the items of valuation stated in the schedules but is empowered to fix the fair cash value of those items without regard to the amount returned, and this is true, but he has a duty to value the property by the exercise of honest judgment, and this with due consideration of the constitutional injunction pertaining to uniformity of taxation. No inspection was made by the assessor. No attempt was made to fix the fair cash value of appellee's personal property but the assessor applied to the undepreciated original cost of that property as shown by appellee's books, the arbitrary depreciation of twenty per cent. It is apparent from the examination of this record that the assessment made against appellee was discriminatory." 376 Ill. 70, 79.

Similarly, in this case, not only did the assessor fail to follow his own rules, but the method he employed did not take into account the value of IBM's personal property according to any recognized elements of value. Rather, the assessor's assessment was arbitrarily based upon the previous year's valuation. Further, the unexplained $1-million reduction in the 1976 assessment, dropping it below the prior year's valuation, illustrates the arbitrary manner by which the entire assessment was determined.

We hold that defendant established by clear and convincing evidence that the 1976 assessment was constructively fraudulent. Inasmuch as the assessor presented no evidence to justify the assessment, the trial court did not err in concluding that IBM's 1976 assessment was arrived at in a constructively fraudulent manner.

For the above-stated reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*