*In re* APPLICATION OF PIKE COUNTY COLLECTOR (The People *ex rel.* Robert M. Capps, Pike County Treasurer and *Ex Officio* Collector of Taxes, Plaintiff-Appellee, v. John Ed Carpenter, d/b/a River Hills Apartments, Objector-Appellant).

Fourth District   No. 4—84—0340

Opinion filed May 8, 1985.

Dove & Dove, of Shelbyville, for appellant.

Michael R. Roseberry, State's Attorney, of Pittsfield (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On October 18, 1983, objector, John Ed Carpenter, d/b/a River Hills Apartments, filed an objection in the circuit court of Pike County to the application of that county's collector for judgment for unpaid real property taxes for the revenue year 1982. The objection was based on the assessment upon which the taxes were levied. After an evidentiary hearing, the trial court entered an order on April 11, 1984, dismissing the objections. Appeal has been taken by the objector. Here, as in the trial court, he maintains that the assessment is constructively fraudulent because of its excessiveness, and because it was obtained by improper means. He also contends that it deprives him of equal protection. We affirm.

■■ The collector contends that the objector lacks standing to proceed, because he did not exhaust his administrative remedies. The collector concedes that the objector filed a *pro forma* complaint with the Pike County board of review (Ill. Rev. Stat. 1983, ch. 120, par. 589.2), but contends that objector's failure to appear before that body to present his case vitiates the effect of the filing. The collector cites no authority for that proposition. We agree with the trial court that the objector's failure to appear did not constitute a waiver of the objection. The board of review overruled the objections and fixed an assessed value of $104,379 for the property. The objector did not file an appeal to the Property Tax Appeal Board from the ruling of the board of review. Failure to take that step is not a complete bar to seeking court review. Ill. Rev. Stat. 1983, ch. 120, par. 592.1.

■ Failure to appeal a decision of the board of review to the Property Tax Appeal Board does, however, limit the scope of court review that may be obtained. Where, as here, the authority for the tax is not disputed, only equitable relief can be obtained to set aside the amount of the assessment. (*Uretsky v. Baschen* (1977), 47 Ill. App. 3d 169, 361 N.E.2d 875.) That relief may be obtained only if the assessment is actually or constructively fraudulent. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299.) No allegation of actual fraud is involved here. Assessments can be held to be constructively fraudulent if shown to be based upon an assessor's lack of knowledge or when so obviously excessive as to require such a construction. *People v. International Business Machines Corp.* (1982), 89 Ill. 2d 287,

432 N.E.2d 867; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299.

The facts of this case are unusual. The property in question is a group of apartment buildings in Griggsville which contains 12 apartments. The assessment to which objector complains was in the amount of $104,379. The project was built in 1981 or early 1982 and had an approximate cost of $330,000. The construction was done by the objector's son, who was a contractor, and the son's wife was the bookkeeper for the objector. The project was financed mostly by loan of $333,275 from the Farmer's Home Administration secured by a mortgage on the premises. The loan carried a basic interest rate of only 1% per annum, but in exchange for receiving the low interest loan, the objector was required to agree to charge only limited rents for use of the apartments. The loan terms made the loan due upon any sale by the objector.

The record indicates that the assessing authorities recognized that property can be appraised by methods of considering (1) income from the property, (2) the sales price of sales of comparable properties, and (3) the cost of reproducing the property less the amount the property has depreciated. The authorities did not consider the actual or potential income from the property. They concluded that no comparable sales were available for consideration. Instead, they based their determination on reproduction cost after considering the advice given them by an individual with experience as a contractor and the cost of building the apartment a few months earlier.

The case for the objector centered upon the testimony of James Bitzer, whose expertise as an appraiser was not disputed. He testified to appraisals made on the income, reproduction cost and comparable sales approaches. Based upon the rentals that were being received, he appraised the market value of the property to be $71,300. Based upon the value of the land used in the project and the reproduction costs of the units, he appraised the market value to be $138,958. Based upon sales prices for what he deemed to be comparable properties in Jacksonville and Quincy, Bitzer appraised the property as having a market value of $97,200. Bitzer then testified that after considering all of the methods he had used, his opinion was that the property had an actual fair cash market value of $88,000. He stated that the objector was in great financial difficulty if he had $300,000 invested in the property.

In substance, Bitzer's opinion that an appraisal in excess of $88,000 was not justified was based upon his conclusion that (1) a community in the location of Griggsville and of that size would not have sufficient demand for apartments renting for a price that would

produce enough total rents to create a greater value, and (2) the apartments could be reproduced for an amount much less than that paid for them. Despite Bitzer's expertise and the logic of much that he said, there are several reasons why, because of the exceptional circumstances here, the trial court could properly conclude that a much higher market value existed, and that the given assessment was not so excessive as to amount to constructive fraud.

■ The objector is correct in his contention that when rental property is to be appraised, the income approach to determining actual fair cash market value is usually the appropriate approach. However, here, the actual rents which could be received were limited by the objector's agreement with the Farmer's Home Administration whereby the 1% loan was obtained. In *Springfield Marine Bank v. Property Tax Appeal Board* (1970), 44 Ill. 2d 428, 256 N.E.2d 334, the court held that in the assessment of realty for tax purposes, even long-term lease provisions, which require unrealistically low rent, should not be given great weight. Here, the court could properly give little weight to Bitzer's evaluation to the extent that it was based on the rents that the objector was permitted to charge. Bitzer did testify that, in his opinion, higher rents could not have been obtained if objector were permitted to charge them, but this testimony was more conjectural than would be an appraisal based upon rents actually received under circumstances where the lessor was not impeded in the rents that could be charged.

Similarly, great weight was not required to be given to the sales prices for properties in Jacksonville and Quincy, as they were some distance from Griggsville and concerned older properties. Most importantly, the trial court was not required to conclude that the objector had grossly overpaid his son for the construction of the apartment project a few months earlier. The trial court could have found that on a reproduction cost basis, the property should be appraised at an amount close to the cost.

In the face of the unusual circumstances concerning the property in question, the trial court could properly decide that (1) it could give great weight to the reproduction cost of the property in determining value, and (2) it was likewise proper for the local assessing authorities to give great weight to that factor. The local assessing authorities had apparently appraised the property at an actual fair cash market value of $210,075, calculated the $104,379 assessment by dividing the market value by three, as required of counties of the size of Pike (Ill. Rev. Stat. 1981, ch. 120, par. 501) and then multiplied that figure by the high multiplier assigned to Pike County. The trial court could properly

determine that, under the circumstances, the $210,075 valuation was not so grossly excessive as to amount to constructive fraud, and that no constructive fraud resulted from the manner in which the local authorities made the assessment.

■ The objector's contention that the assessment of his property denies him equal protection is not supported by cited authority. The use of the reproduction-cost method of valuation has been upheld against claims that it violates the uniformity provisions of article IX, section 4(a), of the Illinois Constitution of 1970. (*Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 387 N.E.2d 351.) Similarly, such a procedure is in conformity with equal protection.

For the reasons stated, we affirm.

WEBBER and TRAPP, JJ., concur.