*In re* APPLICATION OF G. HERBERT JOHNSON, HENRY COUNTY COLLECTOR AND TREASURER (G. Herbert Johnson, Plaintiff-Appellant and Cross-Appellee, v. Carl G. Abrahamson *et al.*, Objectors-Defendants-Appellees and Cross-Appellants).

Third District    No. 3—84—0433

Opinion filed March 6, 1986.

Larry Vandersnick, State's Attorney, of Cambridge (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for appellant.

Stuart R. Lefstein, of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

G. Herbert Johnson, county treasurer and county collector (collector), applied to the circuit court of Henry County for the sale of land delinquent in payment of 1979 real estate taxes. Carl Abrahamson, together with other farmers owning land sought to be sold (objectors), filed individual objections to the application for sale which were consolidated for hearing before the circuit court of Henry County. The substance of the objections was the same and alleged the invalidity of the 1979 reappraisal and reassessment of farmland, farm buildings and farm dwellings. The trial court held the reassessment of farmland invalid, from which part of the judgment the collector has appealed, and also held the reassessment of farm buildings and farm dwellings was proper, from which judgment the objectors have cross-appealed. In a companion case, the objectors commenced an action under 42 U.S.C. sec. 1983 (1982) for alleged constitutional violations. This latter case is the subject of an appeal in this court in No. 3—84—0449.

In 1977, the legislature passed the farmland assessment act, which in section 20e of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 501e) provides the manner and method of assessment of farmland. This section mandates that the equalized value of farmlands

be established by a formula largely dependent on the productivity of parcels of farmland or parts thereof. The productivity is to be determined by using soil maps, productivity indices and other relevant data.

In 1979, Harry Blancher, the supervisor of assessments (supervisor), increased the assessment value of all farmlands in Henry County by adding 12% of the 1978 assessed valuation to the 1978 assessment. He did so, as he testified, because the productivity index applicable to the best farmland had increased by approximately 12% from a year earlier. Consequently, he increased all of the assessments for farmland by the 12% multiplier even though such prior assessments represented cash value assessments without regard to relative productivity differences mandated by the new assessment plan.

There were also reassessments of farm improvements and farm dwellings in 1979 to which objections were also interposed. The details of both the manner of assessments and the objections will be discussed as they become relevant to the errors discussed in this opinion.

The trial court found that the 12% multiplier was based solely "upon the Assessor's own private opinion and failed to consider the necessary factors required by the Farmland Assessment Act" and ordered that the objectors be refunded the 12% across the board increase. The collector has appealed from this part of the judgment. The trial court affirmed the assessment of farm improvements and farm dwellings, from which part of the judgment the objectors have appealed.

■■ ■ The collector first argues the objectors' failure to present evidence of overvaluation of the land under his method made it impossible for the objectors to establish constructive fraud and, therefore, the assessment must be accorded a presumption of propriety. Recently, the Illinois Supreme Court set out the standards of review of a property tax assessment in *People v. International Business Machines Corp.* (1982), 89 Ill. 2d 287, 432 N.E.2d 867, noting that a showing of fraud or constructive fraud is required before a property tax assessment will be reviewed. (*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252.) The supreme court then set forth guidelines for establishing constructive fraud.

"Assessments that are disproportionately higher than those for similar property or assessments that are based on the assessor's own private opinion showing lack of knowledge or a lack of honest judgment are indicative of constructive fraud. [Citations.] Similarly, overvaluation may be so excessive, under some circumstances, as to justify the conclusion that it was not hon-

estly made and, therefore, is constructively fraudulent." (*People v. International Business Machines Corp.* (1982), 89 Ill. 2d 287, 293, 432 N.E.2d 867, 870-71.)

In this case, the trial court found that the assessments were based upon the assessor's own private opinion, and, indeed, the evidence supports this conclusion by the trial court. The evidence that the assessor was told to implement the act is uncontroverted. The assessor was aware that he needed soil maps and surveys to implement the act, and he failed to take any steps to obtain such maps until after this proceeding commenced. No other county employed a similar method. Furthermore, requiring the objectors to prove the value of land under the act would have required them to prepare soil maps and surveys, which was the statutory obligation of Henry County. We therefore find that the trial court's determination that the assessor based the assessments on his own opinion is supported by the evidence and is a method of proving constructive fraud recognized by the Illinois Supreme Court in *People v. International Business Machines Corp.* (1982), 89 Ill. 2d 287, 432 N.E.2d 867.

As his second issue, the collector contends that the trial court erred in holding the assessor did not exercise an honest judgment as to what base data were useful in implementing the farmland assessment act. This argument misinterprets the problem before the trial court. As the supreme court stated in *People v. International Business Machines Corp.*, "Once the presumption of the validity of the assessment is overcome, it becomes incumbent upon the assessor to produce evidence to justify the assessment." (*People v. International Business Machines Corp.* (1982), 89 Ill. 2d 287, 293, 432 N.E.2d 867, 871.) Neither the assessor nor the county can avoid the statutory responsibility for securing and providing maps, surveys or other data from which weighted productivity indices can be ascertained and applied to the various kinds of farmland in Henry County. If, as shown by the evidence, the detailed surveys which would have been made appropriate for making the assessments were not available and their unavailability was in fact due to the lack of diligence on the part of the assessor or county, the question still remains whether the assessor utilized whatever less appropriate data was available, and in this respect the trial court also found the assessor wanting. There is much testimony about soil association maps, conservation maps and other surveys which could have been utilized by the assessor. When all of these factors are considered together, they provide adequate support for the trial court's conclusion the assessor adopted his personal opinion of assessment values, and they did not evidence a good faith effort to

comply with the statutory requirements. The reassessment did, of course, represent repetition of the cash value method in large measure and was unauthorized by statute.

This brings us to the cross-appeal and the objectors' argument that the reassessment of farm buildings and the reassessment of farm dwellings were also contrary to law and should have been rejected by the trial court.

The argument of the objectors is the reassessment of farm dwellings and farm buildings in 1979 is constitutionally impermissible because the owners of farm dwellings and buildings are denied equal protection of the laws.

In 1975 Henry County contracted with Vanguard Appraisal, Inc., of Cedar Rapids, Iowa, to make a complete quadrennial appraisal of all parcels of property in Henry County except farmland and exempt property. The quadrennial reassessment was due in 1979, and the initial contract provided that the appraisers would complete their work by January 1, 1979. Because of delays, the contract was amended to provide that the reappraisals would be finished by January 1, 1980.

The appraisals for farm dwellings and farm improvements were completed by May of 1979, turned over to the assessor and became the effective assessment of farm dwellings and farm improvements for the year 1979. No reassessments for property other than farm dwellings and farm improvements were finished by Vanguard prior to June 1, 1979. These other assessments were in fact completed prior to January 1, 1980, and became effective during the next year.

As indicated earlier, Vanguard completed the appraisal of farm dwellings and farm buildings by May of 1979, as part of the contract to appraise properties for Henry County's quadrennial reassessment. In determining whether the owners of farm dwellings and buildings were treated constitutionally as a class, the reasons for the classification are of course relevant.

Blancher, the assessor, testified the only reason for filing the reassessments of the farm dwellings and buildings for the 1979 reassessment was that they were available. On the other hand, there is other testimony, including documentary evidence, which is unrefuted by Blancher, that Vanguard was requested to reappraise the farm dwellings and farm buildings so they would be available before June 1, 1979. Because of the resultant changes in scheduling as requested by Blancher, Vanguard felt compelled to seek and did seek money to complete its appraisal. According to the Vanguard representative, all of the quadrennial reassessments would have been turned over to the assessor as a complete reappraisal sometime prior to January 1, 1980.

The reassessments of farm dwellings and buildings were provided specially in May only as a favor to and at the request of Blancher, and did in fact substantially interrupt their usual appraising schedules necessitating more time and effort.

■ In *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 372 N.E.2d 74, the court upheld the legislature's classification of farm property for special treatment for assessment purposes. However, this case does not involve the statutory classification of farmland or the owners of farm property for special treatment but rather the conduct of public officials in implementing the quadrennial assessment procedures. Equal protection does not require that all classes be treated uniformly if there is a reasonable basis for treating classes differently. No statutory authority has been called to our attention authorizing the implementation of the quadrennial reassessment of one class of property in one year but delaying reassessment of other classes of property to a subsequent year. It is not the classification of the property which is at issue in this case but rather how the class was treated. In *Beverly Bank v. Board of Review* (1983), 117 Ill. App. 3d 656, 664, 453 N.E.2d 96, 101, the court declared:

> "When State officers engage in unlawful administration of a State statute fair on its face, causing unequal application to those who are entitled to be treated alike, a denial of equal protection exists if the discrimination was intentional or purposeful. (*Snowden v. Hughes* (1944), 321 U.S. 1, 88 L. Ed. 497, 64 S. Ct. 397; *International Society for Krishna Consciousness, Inc. v. City of Evanston* (1980), 89 Ill. App. 3d 701, 411 N.E.2d 1030.) In order to establish a discriminatory purpose, those aggrieved must show that 'the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group.' (*Shango v. Jurich* (7th Cir. 1982), 681 F.2d 1091, 1104.)"

In the *Beverly Bank* case, the allegations of constitutional equal protection violations referred to the deliberate and intentional reassessments of industrial and commercial property resulting in disproportionate increases in taxation. We believe the facts in *Beverly Bank* are legally similar to those in the instant case, and the immediate implementation of the quadrennial assessment for farm dwellings and improvements while delaying that for other property constituted deliberate arbitrary conduct to the owners of properties singled out for such treatment. There is ample evidence in the record that the total of the increase in the reassessment of farm buildings and improve-

ments was substantially in excess of the increase in urban valuations and substantially in access of increases in property assessments resulting from the application of the State multiplier for the year 1979.

The collector's reliance on *People ex rel. Costello v. Lerner* (1977), 53 Ill. App. 3d 245, 368 N.E.2d 976, is misplaced since it neither approves reassessment for identifiable classes of property nor approves the selective implementation of a quadrennial reassessment, as is involved in this case. In fact, the court in *Costello* refers to the assessment as applied to a limited number of properties reassessed in accordance with statutory authority to revise such assessments.

This case is remarkably similar to *Dore v. Kinnear* (1971), 79 Wash. 2d 755, 489 P.2d 898, where the State statute provided for a cyclical reassessment of property on a scheduled basis. Because the reassessment of some properties were available earlier than the schedule provided, they were put in effect prior to the scheduled time, which procedure the court held to be inherently arbitrary, denying those property owners equal protection of the law.

Although there is some evidence the supervisor bore some ill will towards farmers and the owners of farm property, his ill will is an immaterial issue. If the action of the public officials is deliberate and intentional as distinguished from being merely inadvertent or accidental, and such conduct arbitrarily affects a specified class adversely, the constitutional requirement of equal treatment has been violated.

■ The trial court in its written opinion suggests that discrimination was not shown by the facts. This conclusion was required, according to the trial court, because of the absence of any evidence of disparity in values between farm dwellings and improvements and urban or commercial values. We find no support for the conclusion this is the only method of showing discrimination. This is particularly true when admittedly a class of taxpayers has been treated differently, and the evidence amply shows the class was adversely affected in comparison with other classes receiving different or more favored treatment.

■ As a final allegation of error, the collector argues that the trial court erred by refusing to grant a new trial after a soil map had been prepared which was not available at the time of trial. The objectors counter this argument by pointing out that most of the soil maps and surveys which the collector argues were not available at the time of trial in fact were available and had been in the process of completion since 1980, and the 18 of 26 townships were completed at the time of trial. The collector made no attempt to introduce this evidence to justify the 12% increase and should not be permitted to change the theory of his case after it is tried to completion. As our supreme

court stated in *People v. International Business Machines Corp.* (1982), 89 Ill. 2d 287, 432 N.E.2d 867, it is the assessor's burden to produce evidence to justify the assessment once the presumption of validity was overcome. We, therefore, find that the trial court properly denied the collector's motion for a new trial.

For the foregoing reasons the judgment of the circuit court of Henry County holding the increase in the farmlands assessment invalid is affirmed. The judgment affirming the reassessment of farm dwellings and buildings is reversed and remanded with directions that judgment be entered in favor of the objectors together with the supplemental relief necessary to carry out such judgment.

Judgment affirmed in part, reversed in part and remanded.

SCOTT and WOMBACHER, JJ., concur.